## IN THE UNITED STATES DISTRICT COURT
## FOR EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, d/b/a Snodgrass Publishing Group,<br><br>Plaintiff<br>v.<br><br>**Samuel H. Sloan et al,**<br><br>Defendants | : : : : : : : : : : : | **CASE NO.:**<br>**08-cv-829-JLJ** |

### PLAINTNIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS TRUONG/POLGAR, CHANNING, GOICHBERG, AND USCF'S MOTIONS TO DISMISS

Plaintiff submits this consolidated opposition to the instant motions. He has concurrently filed a motion to strike these pleadings on grounds of having been filed out of time (Polgar/Truong) and over limit (all).

### Response To Averments In Channing's Motion To Dismiss

1-2. <u>Admitted.</u>

3. <u>Denied/irrelevant.</u> Defendant Channing is mischaracterizing the nature of the claims, and improperly arguing against facts, which must be construed in the light most favorable to the Plaintiff. Plaintiff has alleged that Defendant Channing conspired with Defendants Polgar/Truong to make the internet postings. Whether or not Channing controlled the USENET board in question is not relevant. Plaintiff has further alleged negligence and fraud by Defendant Channing, for his knowledge of and/or willful disregard of evidence that the postings were made by Truong. Finally, Plaintiff has set forth a clear temporal-proximity relationship between the imposter postings and Plaintiff's correspondence with Channing. As the correspondence is also the source of the claim for fraud, this issue is again not relevant.

4.   <u>Admitted in part, denied in part</u>.  Plaintiff is a former member of Defendant United States Chess Federation, who has been inactive in membership since 1996 and in tournament play since 1991.  He is still rated by USCF.  Unless Defendant is suggesting that USCF practices extortion, Plaintiff did not surrender his rights as asserted by not paying "protection money" in the form of USCF membership.

5-6.  <u>Admitted</u>.

7.   <u>Denied</u>.  The complaint is quite clear and concise, given the facts of this case, the voluminous conduct, and the numerous defendants.  Regardless, it could be amended to cure this deficiency.  It should be noted that Defendant's Memorandum runs <u>27 pages</u>, two pages over the 25-page limit for motions in this district.

8.   <u>Denied</u>.  Plaintiff pled the fraud very clearly in the Complaint, specifically the misrepresentations in the e-mail exchanges with Defendant Channing. This court should note that greater particularity would have lengthened the complaint and been used to bolster Defendant's Rule 8 claim above.

9.   <u>Denied</u>.   This alleged deficiency is curable, regardless.

10.   <u>Denied</u>.  USPS Express Mail requires a signature for delivery.  Plaintiff has attached the signature receipt for the mail as Exhibit A-1, and incorporates it by reference herein . The USPS receipt shows that the mail was <u>signed for</u> by H. Medeleguiez.  As Defendant has not claimed that Mr. Medeleguiez intercepted the seal, the signature was made by an "authorized agent" for purposes of receiving mail for Defendant Channing.

11.   <u>Denied</u>.

12.  <u>Denied</u>.  If there is any "scandalous" material in the Complaint, it is the product of the egregious conduct by Defendants which gave rise to the complaint, and necessary to plead.  Plaintiff was far from the only one targeted.  Defendant Sloan was a primary target, and several innocent women were also targeted in Plaintiff's name by the imposter.

13.  <u>Denied</u>.

### Response To Averments In Goichberg/USCF Motion

1-2.  <u>Admitted</u>.

3.  <u>Denied</u> .  The cause of action is over the conduct of the Defendants well beyond any postings "to a website not controlled" by them.  Had this been a physical rather than an internet assault, that would be like saying "on property not owned by Defendants."  The <u>conduct</u> is the key here, not who owns the internet location on which an "assault" took place.  As there are no page-limits for complaints, Plaintiff denies the "voluminous" charge.

4.  **Denied as incomplete.**  Defendant USCF has a policy: "once rated, always rated."  Plaintiff's current USCF rating is 1900 (Class A), after peaking at 2000 (Expert).  Plaintiff is a <u>former</u> member of USCF, and therefore a member, though not a current or active one.  This is also not relevant to his standing or rights in this case.

5-6.  No response is required, as Defendants would know better than Plaintiff, who has insufficient information to frame a response.  To the extent a response is required, they are <u>admitted</u> solely on the presumption that Defendant is not lying.

7-13. These paragraph state conclusions of law to which a response is not required.  To the extent a response is required to any factual averments, they are <u>denied</u>.

3

## Response To Averments In Truong/Polgar Motion

1.   Admitted.

2.   Admitted in part, denied in part.  The imposter postings are not the sole basis for the Complaint, but they are a primary thrust.

3-7.  These paragraph state conclusions of law to which a response is not required.  To the extent a response is required to any factual averments, they are denied.

While this court ponders the voluminous, over-limit, and in Truong/Polgar's case, out-of-time motions, it should keep in mind that Defendants' legal costs are ultimately being shifted to the USCF Membership at large.  Defendants themselves have no interest in judicial economy, and have chosen to attempt to avoid trial on the merits at all costs, or alternatively, to delay one as long as possible.

WHEREFORE, the instant motions should be denied.  A consolidated Memorandum is attached hereto and incorporated by reference as if fully stated verbatim herein.  An appropriate form of order is also attached.

This the 7th day of August, 2008.

Gordon Roy Parker
4247 Locust Street, #119
Philadelphia, PA  19104
(215) 764-5487
GordonRoyParker@aol.com
Plaintiff, Pro Se

4

## IN THE UNITED STATES DISTRICT COURT
## FOR EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, d/b/a Snodgrass Publishing Group, | : | |
| | : | |
| | : | |
| Plaintiff | : | **CASE NO.:** |
| v. | : | **08-cv-829-JLJ** |
| | : | |
| **Samuel H. Sloan et al,** | : | |
| | : | |
| Defendants | : | |

### CONSOLIDATED MEMORANDUM IN
### SUPPORT OF PLAINTNIFF'S OPPOSITION TO
### DEFENDANTS' MOTIONS TO DISMISS

Plaintiff submits this consolidated memorandum in support of Plaintiff's opposition to Defendants' motions to dismiss. In addition to the few pages of each motion, Defendant Channing's Memorandum is 30 pages, Defendants Goichberg/USCF's is 29 pages, and Defendants Truong/Polgar's is 28 pages. At some time in the past, Plaintiff "knew" that the limit for such pleadings in this district is twenty-five pages, with responses limited to fifteen pages. However, as he could not find the citation to support this knowledge, he has not moved to strike.

As Defendants are arguing Rule 8 violations, Plaintiff suggests they consult a mirror, given the length, poor formatting, and poor structure of their motions, offering in contrast, this consolidated reply. As Defendants' motions also contain specific averments, Plaintiff has replied to them individually.

Plaintiff requests the most liberal construction of this pro-se pleading as allowed by law. The nature of the overlimit responses is such that he has been burdened, with his ability to respond hindered by volume and time constraints.

## I.   **INTRODUCTION**

Defendants raise several issues, including a) service of process; b) timeliness; c) failure to state claims; d) failure to plead "short and plain" (Rule 8); e) standing; f) failure to exhaust administrative remedies; g)  lack of duty to protect; h) lack of specificity

## II.   **LEGAL STANDARD**

### A.   **Motion To Dismiss.**

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." (Shipp, 234 F.3d 907, 911 (5th Cir. 2000); *cert. denied* _U.S._, 121 S. Ct. 2193, 149 L.Ed.2d 1024 (2001)(quoting Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982)).  The question therefore is whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief. (5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, §1357 (2nd ed. 1990)).  (Emphasis Added)

### B.   **Service of Process.**

1.   **Federal Rule 4(e)(1)** allows for service of process "according to state law in the state where the district court is located."

2.   **Pennsylvania Rule 403** authorizes original process to be "served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent."

3   **Pennsylvania Rule 404(2)** allows for service outside the Commonwealth "by mail in the manner provided by Rule 403."  The state time limit for service is ninety

2

(90) days, but the Pennsylvania Rules extend that limit upon the filing of a Praecipe to Reinstate.

      **4.**    <u>**Pennsylvania Rule 401(b)**</u> states that:

> <u>401(b)(1)</u>. If service within the Commonwealth is not made within the time prescribed by subdivision (a) of this rule or outside the Commonwealth within the time prescribed by Rule 404, the prothonotary upon Praecipe and upon presentation of the original process, shall continue its validity by reissuing the writ or reinstating the complaint, by writing thereon "reissued" in the case of a writ or "reinstated" in the case of a complaint.

> <u>401(b)(2)</u>.  <u>A writ may be reissued or a complaint reinstated at any time and any number of times</u>. A new party defendant may be named in a reissued writ or a reinstated complaint.

> <u>401(b)(3)</u>.  A substituted writ may be issued or a substituted complaint filed upon Praecipe stating that the former writ or complaint has been lost or destroyed.

> <u>401(b)(4)</u>.  A reissued, reinstated or substituted writ or complaint shall be served within the applicable time prescribed by subdivision (a) of this rule or by Rule 404 <u>after reissuance</u>, reinstatement or substitution.  (all emphasis added)

## III.  <u>ARGUMENT</u>

      Defendants' arguments overlap a great deal.  Plaintiff responds collectively:

**A.**    <u>**Service of Process Was Valid.  Regardless, Pennsylvania Law Allows For A Reinstatement Of The Complaint, Which Should Compel This Court To Extend Time In A Manner Consistent With The Pennsylvania Rules**</u>

      **1.**    <u>**Express Mail Is "Signature Mail.**</u>  Defendants Channing (Channing Motion, ¶10, Memo, p.3 ), and Goichberg/USCF (Goichberg/USCF Memo, p.2) claim that Express mail is "regular mail with a faster turnaround" or "not requiring a signature." This is not correct, as Express Mail requires a signature for delivery.  Attached as Exhibits A-1 thru A-3 are the <u>signed receipts</u> for the Express Mail delivery of the complaint and summons to Defendants Channing, Goichberg, and USCF.

2. __The Individuals Who Signed For The Express Mails Are "Authorized Agents" For The Purposes Of Service.__

Defendants Truong/Polgar acknowledges that signature-mail was sent, but claims that because neither he nor Ms. Polgar signed for the mail (Henry Santos signed), that service is invalid.  They cite a state-law case, <u>Hydrair. Inc. v. National Environmental Balancing Bureau</u>,2001 Pa.D.&C. 457 (C.P.Phila.April 23,2001).that claims that such a signature is not made by an "authorized agent" to receive service of process.

As <u>Hydrair</u> is a lowest-court state ruling, it is not binding precedent in the Commonwealth, let alone this district court.  Common practice is to place itself in the role of the Commonwealth Supreme Court on such an issue of first-impression.  The "precedent" in this case merely interprets the state rules in its own first impression; the issue is hardly settled.

As <u>Hydrair</u> is a lowest-court state ruling, it is not binding precedent in the Commonwealth, let alone this district court, whose common practice is to place itself in the role of the Commonwealth Supreme Court on such an issue of first-impression.  The "precedent" in this case merely interprets the state rules in its own first impression; the issue is hardly settled.

The state rules do not specify <u>where</u> the mail should be sent, only that it should be sent "to the defendant by any form of mail requiring a signature."  The ruling in <u>Hydrair</u> notes Pa.C.S.A. § 5323(a)(3).1, which states: "The defendant or his authorized agent must sign the return receipt."   The turning question here is whether or not whoever signs for the mail is an authorized agent.  Plaintiff says that they are, with a relatively simple and straightforward argument.

4

Equating personal service with service by mail when it comes to receiving or signing for the package containing the complaint and summons is not merited here, due to several key differences:

a.    **<u>Third-party mail collectors already have the same legal duty as authorized agents.</u>** An "authorized" agent for physical service of process must be specifically authorized to receive process, to ensure that s/he knows what is being signed for, and to secure a legal duty to forward the process to the Defendant. <u>This legal duty already exists with regard to the United States Mail</u>, as it is illegal to intercept the seal.

b.    **<u>Authorization to receive legal process is conferred by the authorization to receive mail.</u>** Unless defendants wish to argue interception of the seal, which they have not, the signatories for each mailing relevant to this motion and performed their legal duty to ensure that Defendants received their mail. In the case of hand-delivered process, the process server has no way of knowing the individual's relationship or legal duty to the Plaintiff, and there is a genuine possibility that the process will never reach the person being served. This risk is nonexistent with signature mail, due to the legal duty not to intercept the seal. The pending motions, which reference the served complaint, and the retention of multiple attorneys indicates that the seal was not broken.

This is not a minor issue: our rules for service of process are hopelessly outdated as it is, the product of an era where physical service was a necessity. Plaintiff is not even asking those rules to be abolished. He cites merely the legal certainty with which the purported goals of service have been accomplished, and the legal basis for this court finding such. In addition to being legally valid, this method of service should be

5

<u>preferred</u> by this court pursuant to Federal Rule 1 (cost reduction), and so that cases are tried on the merits rather than physical or legal footwork.

> ### 3. <u>Especially Because There Are State-Law Claims, This Court Should Engage In Strict Construction Of The Pennsylvania Rules And Extend Service For A Period Equal To That Following Reinstatement Of The Complaint.</u>

It is also worth noting that in <u>Hydrair</u>, the court did <u>not</u> dismiss the Complaint for lack of service, but rather instructed the Plaintiff to reinstate the Complaint, which extended the time limit for service for 90 days for an out-of-state party.

A strict interpretation of Rule 4(e)(1)'s "according to state law" provision would have this Court literally using Pennsylvania law to govern service. This is not a "federal" issue, as there are actual state-law claims present in this action which could have been filed in state court and which would be subjected to state rules.. Under those rules: Plaintiff would be able to reinstate the complaint, for a 90-day extension to serve. As there is no Praecipe to Reinstate in federal practice, Plaintiff has concurrently filed a Motion For Extension of Time to serve the Complaint and Summons, in the event this court invalidates service.

Rule 4(e)(1) is not subject to the Supremacy Clause because its purpose is opposite: to <u>allow</u> state law to govern service. Our sovereign states may do so as they see fit. This court should recognize that sovereignty, especially in cases with state-law claims, and defer <u>completely</u> to the state rules. A 90-day extension for service (should it be needed) is therefore in order.

4.   **Defendant USCF has not objected to service, and was properly served, as were Defendants Continental Chess Association and Susan Polgar Foundation.**

Defendant USCF has not objected to service by mail, likely because precedent is unfavorable:

> Rule 424 does not make reference to Rule 403; nevertheless, <u>court have interpreted service by mail under Rule 403 to satisfy service on out-of-state corporations</u>. See generally <u>Hemmerich Industries, Inc. v. Moss Brown & Co., Inc.</u>, 114 F.R.D. 31 (E.D. Pa. 1987). (Emphasis Added).

Service upon Defendant USCF was therefore valid.  It should further be noted that, in the absence of a rapid ruling on jurisdiction, Plaintiff may need to file a second lawsuit or a writ in state court in order to preserve those rights.

B.   **Personal Jurisdiction Over All Defendants Is Proper.**

1.   **This Court Has Personal Jurisdiction Over USCF.**

Defendant USCF is a corporation which 1) conducts business in Pennsylvania; 2) has thousands of paying members in Pennsylvania; 3) sanctions tournaments in Pennsylvania; 4) has contractual relations with the Pennsylvania state chess association; 4) regularly solicits business in Pennsylvania; 5) has contractual relations with physical chess clubs in Pennsylvania; and 6) publishes ***Chess Life***, hundreds or thousands of copies of which are <u>sold</u> (via membership) to residents of the Commonwealth.

2.   **This Court Has Personal Jurisdiction Over All Board Members.**

Defendants are <u>board members</u> and <u>officers</u> of a corporation with a strong physical presence in the Commonwealth.  All have published their campaign statements in Chess Life, which is distributed in the Commonwealth, and all have final voting authority over any contracts entered to in the Commonwealth.

7

Even without USCF conferring jurisdiction on its executive decisionmakers – Plaintiff was tempted to simply ask ***are they serious?*** – the individual defendants have secondary contacts with the state which also confer jurisdiction, in the event the long-arm statute should fail:

a.  **Defendants Goichberg/CCA** personally direct several USCF-sanctioned tournaments in Philadelphia, including the World Open and National Chess Congress, two of the nation's most popular events. As these

b.  **Defendants Truong/Polgar** sell chess instruction materials and sell (or solicit) chess instruction business from to residents of the Commonwealth. Defendant Polgar publishes (or published during relevant times) a column in ***Chess Life***, which is distributed to readers in the Commonwealth.

c.  **Defendant Channing** published his campaign statement in Chess Life, and has acted in conspiracy with other Defendants, thus conferring secondary jurisdiction.

3.  **This Court Has Supplemental Jurisdiction Over All Defendants.**

Pennsylvania law allows for supplemental jurisdiction over all defendants if the Commonwealth has jurisdiction over any single defendant. As Defendants Goichberg and USCF conduct physical business in the Commonwealth, personal jurisdiction over both defendants is certain, thus conferring supplemental jurisdiction over the other defendants, including but not limited to for the state-law claims.

**4.    This Court Has National And Supplemental RICO Jurisdiction Over All Defendants**.

RICO allows for "nationwide service of process" under 18 USC §1965(b). This alone confers jurisdiction over all Defendants. As with state law, jurisdiction over all RICO defendants is further conferred as in 2) above by personal jurisdiction over Defendants USCF, Goichberg, Polgar, and Truong.

**5.    This Court Has Jurisdiction Under Pennsylvania's Long-Arm Statute**.

As part of its pattern of targeting Plaintiff, Defendants Truong/Polgar impersonated Plaintiff with USENET messages that were highly insulting, even sexually harassing, directed at Jennifer Shahade, who grew up in Philadelphia, and whose family resides and is domiciled here. The purpose of the messages was to incite Shahade's father, Michael, a "nuts and bolts" type with a bit of a reputation, to put it mildly, into acting out against Plaintiff.

**6.    Defendants Offer No Jurisdictional Affidavits, And Jurisdictional Discovery Has Not Been Conducted.**

A court may consider the allegations in the complaint to be true "unless controverted by the defendant['s] affidavits." *Catalina Mktg. Int'l, Inc. v. Coolsavins.Com Inc.*, Civ. A. No. 00-2447, 2003 WL 21542491, at *1 (N.D. Ill. July 3, 2003).

A summary denial of jurisdiction, without affidavits or evidence, as Defendants are attempting, contravenes existing case law. Further, in Toys "R" US, Inc., v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003), the Third Circuit remanded the case back to the District Court to allow for exactly this type of discovery when jurisdiction was in controversy, refusing to allow a motion to dismiss for lack of jurisdiction without the

Plaintiff having the benefit of such discovery.  Plaintiff has yet to be afforded such discovery, so dismissal for lack of jurisdiction would be premature.

C.   **Rule 8 Was Not Violated.**

Federal Rule 8 is unconstitutionally vague, as it does not specify a page-limit; if it did, Plaintiff would comply with it as he does when such limits exist.  As the arguments around such a subjective rule are of the "is-not/is-too" variety, Plaintiff argues only that the rule was not violated ("is too" short and plain), and that any found deficiencies of this nature are curable via leave to amend.

D.   The Title VII and Fraud Claims Were Timely Pled And Administrative Remedies Were Exhausted.

1.   **Title VII.**  Plaintiff argues fraudulent concealment as tolling the time limit for filing suit.  He has filed a second EEOC charge based on the Mottershead Report, naming USCF.  Defendant Channing claims that he was not named and therefore cannot be sued, yet the "piggybacking" provision of Title VII requires that only <u>one</u> timely EEOC charge be filed for any given set of facts.  He can therefore be named.

It should finally be noted that Defendants Truong/Polgar were not on the USCF board until after Plaintiff's right-to-sue letter was issued, and USCF was not a respondeat-superior until July 2007.  It is up to this court to determine whether this case or its refiling should proceed, as much of the cited conduct occurred after the EEOC investigation and even the time limit for filing suit, as the final imposter posting was September 19, 2007.

2.   **PHRA.**  It is standard practice for this state's EEOC to "dual file" a complaint with the PHRC.  This was not done as the EEOC charge was transferred to Tennessee, despite Pennsylvania jurisdiction over USCF.  Plaintiff exhausted his remedy,

but the EEOC refused to dual-file; that was not the doing of Plaintiff. Hit rights under the PHRA, and its far more liberal time limits, remain intact. The increased time limit (two years) also means these claims were timely.

3. **Fraudulent Misrepresentation.** The fraud claim against Defendant Channing was timely, as the limit for a fraud claim in Pennsylvania is <u>two</u> years, not one, with this case filed less than two years after Plaintiff and Channing began corresponding. While the injury-in-fact standard is met, the discovery-of-injury standard,

4. **Volition/supervision/control.** Plaintiff has alleged that the human defendants have acted as a unit, a group, in concert, and full conspiracy, for the purpose of destroying the USCF. He alleges that all individuals therefore are liable for all conduct by all human defendants. He further alleges that Defendant Channing specifically ordered the conduct, which was carried out by Defendants Truong/Polgar, who are essentially one person for this purpose, as they are married and jointly liable regardless.

5. **Discovery of injury**. Wherever else relevant, Plaintiff claims a discovery-of-injury date of October 6, 2007, the date the Mottershead Report was published to the public.

**E.    Rule 12(b)(6) Was Not Violated.**

Defendants collectively argue an assortment of rule 12(b)(6) violations. Plaintiff counters that the facts clearly give rise to every stated cause of action: plaintiff was defamed, in his trade, his privacy was invaded, he was portrayed in a false light, his prospective and existing contractual relations were interfered with, in a civil RICO

11

conspiracy enterprises, he was defrauded, and suffered clear, irreversible, pecuniary, preventable, foreseeable harm for which Defendants had a legal duty to prevent,

To the extent this court finds curable deficiencies, Plaintiff should be granted leave to amend.

1. **Fraud claims**. Plaintiff alleged fraud on the part of Defendant Channing, due to his concealment of his role in the internet postings, and alleges liability for all defendants, as they were acting as a group. To the extent other defendants are not directly liable, they are still liable for civil conspiracy, though they did have a hand in authorizing the fraud as part of their larger scheme, with USCF liable for the conduct of its board members.

2. **Defamation/invasion of privacy claims.** Defendants Goichberg/USCF argue that Plaintiff did not allege "third-party understanding of the defamatory meaning" of the statements. Plaintiff argues that the nature of the impersonation was such that they were libelous *per se*, as well as constituting a *per se* invasion of his privacy and right to publicity, the latter a first-impression issue in the Commonwealth. Defendants Truong/Polgar are liable for direct involvement, Defendants Channing for ordering the impersonation, and Defendant Goichberg for authorizing it, with Defendant USCF liable for its board-member conduct.

The conduct of the imposter was defamation in its purest form, an attempt to portray Plaintiff in a highly negative light, and done so in a manner designed to fool the public into thinking Plaintiff was the author of truly horrible statements directed at innocent third parties, in the hope of agitating them into harming Plaintiff.

12

As Plaintiff was a rated chess expert at his peak, and is currently slightly below that rating, a rating achieved by maybe 15 percent of <u>tournament</u> players in the United States, the economic harm to his chess reputation is self-evident, especially since Plaintiff has published chess materials on his website, from which he has derived or attempted to derive revenue.  The facts therefore support a finding of pecuniary damage, given the per se nature of the defamation.

3.   **Title VII/PHRA Claims.**  These claims were properly pled, as Plaintiff's "protected Title VII activity" constituted his grievance with USCF, communicated to board member Channing, and his subsequent EEOC complaint, after which the retaliatory conduct continued.  Defendants are, to this day, using third parties to harass and defame Plaintiff, giving rise to yet another EEOC charge based on new facts.  <u>It is not necessary to prove the underlying charge to prevail on a retaliation claim relating to the original charge</u>.

All Defendants are individually liable for acting in concert and full conspiracy: all board members stood down while Plaintiff was being threatened by individuals such as Matt Nemmers, who was doing volunteer work as USCF's Military Chess Liaison, and over whom the USCF had direct control.

Where Defendants Truong/Polgar were concerned, they were not USCF board members until after the right-to-sue letter was given to Plaintiff, while Defendants Channing and Goichberg's involvement was not known to Plaintiff until the release of the Mottershead Report.

The failure-to-hire-against-public-interest claim under the PHRA is judged on a case-by-case basis, except where it is established that a cause of action for

given conduct exists. This is an inclusionary, not exclusionary, precedent, and the facts in this case support a finding against the public interest, given that Ms. Shahade was hired as part of the overall scheme in which Plaintiff was targeted.

      4.   **Negligence claims.** Defendants have a legal duty to protect Plaintiff from foreseeable harm. The board members named in this suit were busy plotting with and later attacking, even suing, each other, and this caused USCF business to be neglected. The board also had a duty to USCF members relating to the nonprofit, and that duty was neglected as well. The harm to Plaintiff was directly attributable to the negligence (or gross negligence), as proper diligence would have led to the unmasking of the imposter, if one assumes *arguendo* that Defendants weren't involved in its posting. As Plaintiff has alleged conspiracy, this count is pled in the alternative.

      5.   **Tortious interference/trade libel/Lanham Act claims.** The conduct set forth in the Complaint is more than sufficient to give rise to a tortious-interference claim. The massive impersonation of Plaintiff, and defamation, was designed to interfere with his development of revenue in chess. As a former rated expert, Plaintiff has lifetime credibility as one who knows the game better than most, even if he is no longer in peak form. Many of Plaintiff's similarly situated chess peers do quite well as teachers and chess publishers. The board members acted in conspiracy to interfere with this revenue. Defendants Truong/Polgar acted directly, at the direction of Defendant Channing, who was taking orders from Defendant Goichberg.

      The trade libel and Lanham Act claims are valid, given the conduct alleged, especially since Defendant USCF itself offers instructional materials and referrals/endorsements for instructors to its membership. It's books-and-equipment

division generates revenue for the USCF, either through direct sales or by selling the distribution rights.  Defendants Polgar and Truong are in further direct competition with Plaintiff, as chess teachers and producers of instructional materials.

Despite Defendant Channing's argument, there is a "misleading-statement" provision of the Lanham Act, in that the Act expressly prohibits disparagement or misleading statements in commercial promotion.  The correct technical term may be "false-and-misleading <u>advertising</u> provision," but the substance is the same.  The false-designation-of-origin claim is based on the false designation of Plaintiff as the author of the statements.  The economic and competitive harms are both averred and clearly evident from the pled facts.

F.   **<u>RICO Claims Were Properly Pled</u>.**

The RICO enterprise was set forth in the Complaint, in the most efficient manner possible (using *The Sopranos* to show each member's role and participation in the enterprise).  As averred in the Complaint, state-law crimes punishable by a year or more in prison are predicate acts, and the predicate acts averred directly related to the operation of the enterprise, as Plaintiff was impersonated as part of the enterprise mission.

Rule 9 was not violated, as Plaintiff was not required to submit a RICO case statement.  This court could require him to do so, or if he is required, this is curable by court order and amendment/supplemental pleading.  Dismissal with prejudice is therefore not justified.  The RICO enterprise was clearly delineated, with many predicate acts cited.

15

### G.   **The Civil Conspiracy Claim Was Properly Pled.**

An action for civil conspiracy in Pennsylvania requires only that "two or more individuals" collude to violate any tort in the Commonwealth which itself would give rise to a cause of action.  The defamation claim, and other claims, all give rise to a civil conspiracy claim, due to the allegation of group activity and group conspiracy and collusion.

### CONCLUSION

In addition to any civil relief, Defendants have committed or conspired to commit a number of heinous criminal acts against Plaintiff.  Their conduct certainly violates 47 USC §223(h)(1), relating to anonymous harassment over the internet, while the other crimes are detailed in the Complaint.  The complaint is neither voluminous, incomprehensible, nor improperly pled, and it clearly states claims for relief which should be granted should the facts be proven, something which is likely, given the third-party evidence in the Mottershead Report, USCF's own pending deposition of Defendants Polgar/Truong in another lawsuit concerning the same facts, and its own motion to remove Truong and Polgar from its board due to alleged malfeasance relating to these facts.  Defendants are literally the remnants of a house divided against itself.

Personal jurisdiction over the defendants would appear to be clearly indicated. The service-of-process arguments are not as clear, though it is well within this court's discretion to validate existing service or allow for an extension of time to serve should it choose.  Plaintiff should be allowed amendment to the complaint to cure any deficiencies, if for no reason than the interests of no party, nor justice, would be served by further delay.

16

Much new evidence has come to light since this action was filed, and Defendant USCF itself has sued and sought discovery from Defendants Polgar/Truong relating to the internet postings and other matters. The retaliation against Plaintiff is ongoing, and if this court refuses to allow trial on the post-right-to-sue conduct, that will be raised in a refiling should that need arise.

Plaintiff has been horribly targeted over the past few years. He has outlined both conduct and motive, and correctly identified the individuals involved. Absent a RICO conspiracy, there is still a clear civil conspiracy, and dereliction of duty rising to negligence or gross negligence. Defendant USCF has been infiltrated by those who seek to destroy it, and the delay tactics in this lawsuit are also part of that, as it buys time for the Defendants to further plunder a once-great chess federation, while delaying justice for Plaintiff, and burdening all involved with more delays and a refiling.

This the 7th day of August, 2008.

Gordon Roy Parker
4247 Locust Street, #119
Philadelphia, PA  19104
(215) 764-5487
GordonRoyParker@aol.com
Plaintiff, Pro Se

17

*Exhibit A - 1*

**UNITED STATES**
**POSTAL SERVICE**

Date: 06/17/2008

Walter Parker:

The following is in response to your 06/17/2008 request for delivery information on your Express Mail item number EH04 9530 370U S. The delivery record shows that this item was delivered on 06/02/2008 at 01:29 PM in PALM BEACH GARDENS, FL 33418 to H MEDELEGUIEZ. The scanned image of the recipient information is provided below.

Signature of Recipient: 

Address of Recipient: 

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

**UNITED STATES POSTAL SERVICE.**

Date: 06/17/2008

Walter Parker:

The following is in response to your 06/17/2008 request for delivery information on your Express Mail item number EH04 9530 366U S. The delivery record shows that this item was delivered on 06/03/2008 at 04:55 PM in SALISBURY MILLS, NY 12577 to S IMMIT. The scanned image of the recipient information is provided below.

Signature of Recipient:

STEVE IMMITT

Address of Recipient:

PO Box 249

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

**UNITED STATES**
**POSTAL SERVICE.**

Exhibit A - 3

Date: 06/13/2008

Walter Parker:

The following is in response to your 06/13/2008 request for delivery information on your
Express Mail item number EH04 9530 410U S. The delivery record shows that this item was
delivered on 06/09/2008 at 12:25 PM in CROSSVILLE, TN 38555 to C BRUCE. The scanned
image of the recipient information is provided below.

Signature of Recipient:

**Delivery Section**

*Cheryle Bruce*
*Cheryle Bruce*

Address of Recipient:

*137 O'Brien Dr.*

Thank you for selecting the Postal Service for your mailing needs. If you require additional
assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

## IN THE UNITED STATES DISTRICT COURT
## FOR EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, d/b/a Snodgrass Publishing Group, | : | |
| | : | |
| Plaintiff | : | **CASE NO.:** |
| v. | : | **08-cv-829-JLJ** |
| | : | |
| **Samuel H. Sloan et al,** | : | |
| | : | |
| Defendants | : | |

## <u>ORDER</u>

AND NOW, this _____ day of August, 2007, in consideration of Defendants' Motions To Dismiss (Goichberg, Channing, USCF, Truong, and Polgar), and all responses thereto, the instant motions are DENIED.

SO ORDERED.

_____
J.