IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a/k/a "Ray Gordon" a/k/a "Ray Gordon, Creator Of The Pivot," d/b/a Snodgrass Publishing Group, <br><br> Plaintiff <br><br> v <br><br> **William Goichberg**, 2084 Route 94, Salisbury Mills, NY, 15277; **Paul Truong**, Susan Polgar Institute For Chess Excellence (SPICE), Texas Tech University, Lubbock, TX 79409; **Susan Polgar**, SPICE, Texas Tech University, Lubbock, TX  79409, **United States Chess Federation**, 137 O'Brien Drive, Crossville, TN, 38555. **Joel Channing**, 5520 PGA Boulevard, Palm Beach, FL, 33418, <br><br> Defendants | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **CASE NO.: 08-CV-829** |

## AMENDED COMPLAINT FOR LIBEL, GROSS AND SIMPLE NEGLIGENCE, LANHAM ACT VIOLATIONS, TITLE VII AND PHRA RETALITION, CIVIL CONSPIRACY, RICO CONSPIRACY, AND FRAUDULENT MSREPRESENTATION

Plaintiff submits this Amended Complaint.

## THE PARTIES

1.    Plaintiff Gordon Roy Parker, a/k/a "Ray Gordon," is an adult male resident of and domiciled in the Commonwealth of Pennsylvania.  His address is 4247 Locust Street, #119, Philadelphia, PA  19104.  He does business in the Commonwealth as Snodgrass Publishing Group.  Plaintiff has published several books on many topics, including chess and seduction (relationships etc.), under the name "Ray Gordon" through www.cybersheet.com.  He also peaked as a USCF-rated Expert, specializes in, and teaches chess openings.

2.    Defendant William "Bill" Goichberg is currently a member of the USCF Executive Board, and is domiciled at the address listed for him in the caption.

3.    Defendants Paul Truong and Susan Polgar are married, and now domiciled and reside in Texas, and are employed by Texas Tech University, at the address listed for them in the caption.  Prior to August 2007, they resided in New York state, in Queens, New York City.  Both

defendants are members of the Executive Board of Directors ("Board") of Defendant USCF.

4.    Defendant United States Chess Federation ("USCF") is an Illinois, nonprofit, 501(c)(4) corporation, which is headquartered at the address listed for it in the caption.

5.    Defendant Joel Channing is a resident of and domiciled in the state of Florida, and can be served at the address listed for him in the caption.  He was also on the Board during the times in controversy, but resigned earlier this year.

6.    All listed defendants have been served in this case, as outlined in previous pleadings.

## STATEMENT OF JURISDICTION AND VENUE

7.    This Court established jurisdiction over the Defendants with its order of September 2, 2008 dismissing this case with leave to amend, for the jurisdictional reasons cited in the original Complaint, including federal questions, Title VII, RICO's national-service provision, diversity jurisdiction over the state-law claims, Defendant USCF's (and, by extension, its Board's) minimum-contacts with and business conducted in the Commonwealth, and Pennsylvania's long-arm statute.

## BACKGROUND

8.    In late January, 2006, Defendant USCF announced the hiring of Jennifer Shahade as the editor for the online version of *Chess Life*, Defendant USCF's official magazine.  The hiring was announced after the fact, when it was revealed that the job had never been posted or circulated, and that it was created specifically for Ms. Shahade because Defendant USCF "did not want to lose her."

9.    In February 2006, Plaintiff exchanged a number of e-mails with Defendant Channing, a USCF Board member, concerning the Shahade hiring, and his belief that it was discriminatory on the basis of gender.  Plaintiff also expressed concerns over a remark made by

2

Defendant Channing in a USENET posting, in which he called Plaintiff a "nutcase." Plaintiff explained that the posting was made by an imposter.

    10.   On February 22, 2006, Defendant Channing sent an e-mail to Plaintiff in response, which stated in part:

> I'm disappointed that you can't (or won't) help me authenticate your claim of innocence. Of course, you understand that <u>the author of that pornographic Shahade posting could never be considered for any position with USCF</u>.

    11.   "Authenticating Plaintiff's innocence" would have been <u>impossible</u>, as, at the time, the imposter was posting via anonymous remailers, which made the messages untraceable. Channing was not moved; on February 23, 2006, he sent the following e-mail statement to Plaintiff:

> "You can't be serious! The writer of that pornographic Shahade posting is an immature, angry person whom no responsible person would ever hire. Sorry you don't take me seriously enough to help me to be convinced that you are telling me the truth."

    12.   At the time of Plaintiff's e-mail exchange with Defendant Channing, an imposter now known as the "Fake Sam Sloan" ("FSS") had been posting messages to the <u>rec.games.chess.politics</u> (RGCP) newsgroup on USENET.[1] The imposter would attempt to make Sloan, then a candidate for the USCF board, look bad by attacking female chess personalities, including Shahade.

    13.   On March 17, 2006, the FSS began impersonating Plaintiff on USENET, in a manner similar to his impersonation of Sloan. The FSS's postings were documented in the "Mottershead Report" which was attached as Exhibit C to the original Complaint in this action, which is incorporated by reference as if fully stated verbatim herein. Excerpts of the FSS's posts concerning Plaintiff are cited by their "Mottershead #," with the date, time, and other information about the post in the exhibit.

---

[1] USENET is a decentralized, message-distribution system by which users subscribe to "newsgroups" and all messages from each subscriber are sent to all other subscribers.

14.   Following are other notable statements made by the imposter, as Plaintiff, from postings which were archived in the Mottershead Report, from the time period of March 17-April 27, 2006, with footnotes or comments, where appropriate:

a.   "I think she [female Russian grandmaster Alexandra Kosteniuk, a "rival" of Defendant Polgar] cheated."

b.   "I've never seen it. Only saw the one with M.A." (Mottershead 288436).  This post implicates former board member Michael "fpawn" Goodall, of California, as a possible co-conspirator, due to the signature which appears in the posting.  Due to no corroborating evidence, Goodall has not been named.

c.   "Do you want to fuck her?" [Batchimeg Tuvshintugs].  Ms. Tuvshintugs was fifteen years old at the time of the posting, which was made by the imposter in response to a post by Defendant Sloan.  (Mottershead #288438)

d.   "So you [Marcus Roberts] finally admit that you're taking blood money from Ilyumzhinov. We knew that all along." (Mottershead #288456).

e.   "Your resume is shit. You're nothing but a cocksucker. You blow Ilymzhinov for blood money.I live in PA. Wanna come and get me? I let you blow me.  My address is: 4247 Locust Street Philadelphia PA 19104. Come and get me asshole [Marcus Roberts]." (Mottershead #288472-274, duplicates).

f.   Several postings threatening Marcus Roberts:

1)   "Yes, he does. You're dead meat." (Mottershead #288479)[2];

2)   "He does. You're [Marcus Roberts] dead potato." (Mottershead #288481);

3)   "We love you Marcus Roberts. We really do. That's why we want to pay the proper tribute that you deserve. See you in May." (Mottershead #288681);

4)   "Marcus Roberts will get what he deserves. He's gonna to get it good. Does he believe in God?" (Mottershead #288732);

5)   "We should cut Marcus Roberts' balls and give it to Ilyumzhinov. I'm glad you'll get him in May. Good luck!" (Mottershead #288732).\

6)   "Time to cut off Marcus Roberts' dick and shove it down his throat." (Mottershead #289044).

7)   "And you're an asshole. You're dickhead. You're worthless. You need to be eliminated." (Mottershead #290323).

g.   And posts (as Plaintiff) to female chess personalities:

1)   "She [Kosteniuk] wants the attention. Her husband wants to show off his 25

---

[2] This is a terroristic threat made over federal wires by the imposter, as Plaintiff

years younger jewel. It's about their ego. It's not about chess. It's about money in their pocket. Same goes with chess bitch [Jennifer Shahade]." (Mottershead #289849).

2) "I'm not jealous. I'm mad that [Kosteniuk] didn't blow me." (Mottershead #289870).

3) "We can bring back the sassy editor [former *Chess Life* editor Kavel Pehme, who caused controversy with "adult" themed articles] who will feature Kosteniuk in a thong and Shahade topless. That will sell chess for sure." (Mottershead #289873).

4) "I bet old Hassie [RGCP regular Richard Haas] likes Marinello and Shahade. They have huge ones." (Mottershead #291874).

h.  "60,000 kiddie members don't know and don't care who GM Evans is. They care about who Jennifer Shahade is. She's a chess bitch and a hottie. They ditched GM Evans for WGM Shahade. Who would you rather look at? Shahade or Evans?" (Mottershead #290273).

15.  In a second e-mail of April 27, 2006 Defendant Channing explained what he claimed was the motivation for the Shahade hiring:

> As for Jennifer, she was our runner up candidate for *ChessLife* editor (we reviewed a lot of resumes and interviewed quite a few people), and part of the decision to hire her was, as I recall, a sort of spontaneous decision by the Board (excluding Greg, who wasn't part of any deliberations). Part of what swayed me was the idea that her contacts might be useful in getting good articles and interviews from well know chess personalities. Any, I had been favorably impressed by her and the idea of hiring her made sense to me. My background is strictly private sector, and I am becoming more aware of the sensitivities involved with matters that I used to look upon as routine decision making.
>
> Anyway, I'm not at all offended by the fact that you feel that you may have to pursue your grievance formally, rather I'm happy that you felt you could tell me about it in such a civil way.
>
> Sincerely,
>
> Joel Channing

16.  The FSS did not impersonate Plaintiff again until May 20, 2006, when it began doing so, apparently in connection with the upcoming USCF Board elections that summer:. The following posts were made between May 20, 2006, and September 19, 2006:

a.  Some posts targeting Beatriz Marinello:

1) "Dykes [Beatriz Marinello] chew? I thought they suck?" (Mottershead

#293925).

    2)    Why is [Marinello] such a bitch? Is it because she's not getting enough at home? (Mottershead #293933).

    3)    "It has been confirmed that Marinello has been added to Ilyumzhinov's team. She'll serve as the head whore for Azmaiparashvili." (Mottershead #294552).

  b.    Shahade and Hoffman know the right people. That's a cool $90K for minimal work." (Mottershead #295010-12, posted in triplicate).

  c.    And now some posts targeting Mr. Sloan:

    1)    "Sloan is a mental case for sure. He likes to fuck dykes and minors." (Mottershead #295159).

    2)    "Does Sam Sloan realize that he's a big asshole? No one gives a shit about what he says. He's also a child molester and criminal." (Mottershead #295215).

    3)    "The USCF should censor everything written by you. You're a criminal, a child molester and an asshole." (Mottershead #295232).

    4)    "You're [Sloan] still an asshole and you should be banned in chess. Go fuck yourself. Zito got it right. You're a fucking child molester. It's time that everyone knows about this." (Mottershead #295541).   (The post was signed "Bill Brock").

    5)    "He [Sloan] is a child molester and a criminal. He should be banned from chess and the USCF." (Mottershead #295556).  (Also signed as Bill Brock).

  d.    "Twoje oczy sa jak dwa ksiezyce. Bardzo mi sie podobasz. Kocham Cie. Wyjdziesz za mnie?" (Mottershead #295727).[3]

  e.    "You're a fucking lunatic. You [former board member Michael Goodall] and Sloan should be banned from chess."  (Mottershead #296113).

  f.    "Don't kiss my ass. I'm never gonna vote for you. You're a child molester and a scumbag, <u>You raped those minors</u> and you should be in jail." (Mottershead #296189).

---

<u>Retaliation Relating To Matt Nemmers</u>

17.   In late September, 2006, Matt Nemmers, a USCF member at the time, began attacking Plaintiff via USENET.  On or around October 3, 2006, Mr. Nemmers posted that he had been made the "new chairman of the USCF military committee."   The postings by Mr. Nemmers imputed unemployability upon Plaintiff, and claimed that "no one [at USCF]" took his complaints seriously.

18.   Because Mr. Nemmers was a USCF committee chairman, and because Defendant Channing had established previously that the USCF would not hire people based on their USENET postings, Plaintiff asked him to investigate Mr. Nemmers's postings, which he considered libelous and retaliatory.

**The Imposter Resumes (October 3, 2006)**

19.   On October 3, 2006, Defendant Channing e-mailed Plaintiff in response to his concerns about Mr. Nemmers's increasingly hostile postings.

> Ray, <u>I was preparing to research your claim when I saw your latest disgusting posting regarding Susan Polgar</u>.  I gave you the benefit of the doubt once but you just don't seem to understand anything.  I give up.  <u>Don't ever bother to contact me again</u>.  I've got serious work to do on behalf of civilized people that love chess.
> Joel Channing  (Emphasis added)

20.   Subsequent to this exchange, Mr. Nemmers, who is an active member of the military, became even more aggressive towards Plaintiff, including a highly threatening statement made in a posting of January 16, 2007:

> the term "risks" doesn't apply when people mess with you, Gordo. <u>you're just an easy target</u>.  A fish in a barrel, if you will.  <u>People like to shoot those</u>. (Emphasis Added)

21.   Immediately after this e-mail exchange with Defendant Channing, the FSS began impersonating Plaintiff yet again, and would continue uninterrupted through February 16, 2007,

7

shortly after the EEOC initiated its investigation.  The messages also became far more vicious, as indicated by their content:

    a.    [SUBJECT: "Young Chess CUNT For Hire?"] "Which young chess cunt will shag me for $25? Liz Vicary, Jenny Shahade or Laurie Ross?"  (Mottershead #30269).

    b.    "You know I can sue you [Nemmers] for libel. You're asking for it."[4] (Mottershead #302271).

    c.    "Stop impersonating me! Stop it now!" (Mottershead #302272).  This post was in response to a post by Plaintiff which explained that the post in b) above was not posted by Plaintiff.

    d.    "But do you [Jennifer Shahade] love your cunt and tits? I bet you do. They're yummy." (Mottershead, #303527).

    e.    [SUBJECT: "I'm suing Jennifer Shahade."]  "I'm suing Jennifer Shahade for taking a job that clearly belongs to me. Everyone knows I'm the most qualified person for the web editor job." (Mottershead, #303538).

    f.    "My Mom has given me a 30-day notice to move out of her house. I'm outraged! Where am I supposed to go now? I have no job and I have no money. I'm banking on cashing against the USCF. Now my plan is all fucked up." (Mottershead #303976).[5]

    g.    "How about $15 [an hour, for sex with Sam Sloan's wife]?" (Mottershead, #304170).

---

[4] This was made in response to one of Nemmers' postings, which included the following statements by Nemmers: "Do your own homework, smarty-pants. Why you should care about an. organization you have no vested interest in (as a NON-MEMBER) I have no idea. But go ahead....stomp around in your little pink booties and whine and cry about how the USCF mistreats you and question every decision they make, even though you don't have standing to register such complaints (as a NON-MEMBER) and even though nobody's listening to your pathetic sour grapes pissing and moaning anyway.

All you're good for is a few childish, pathetic, (and let's not forget to mention LAME) one-liner flames against upstanding people like GM Susan Polgar a few times every month. That's all.  The only thing you've ever contributed to the game you claim to "have such talent for" is a couple of feeble insults against the top players, organizers and v

That's it!  How does that FEEL, Gordo?  And how does it feel to know  that you and all your whining, crying and threats of litigation don't even REGISTER on their emotional or psychological radar?

You're such a small, weak, pathetic little man.  If it wasn't for your personality and unjustifiably tremendous ego, I'd almost feel sorry for you and offer you some change for your cup.  But I don't and neither does anybody else.  Now go make me a sandwich.
[5] As anyone with access to PACER could have verified since the day after it occurred, Plaintiff's mother, Penny Parker, died of stomach cancer on July 26, 2007 at 4:58 a.m.  Her will was never probated because her estate was insolvent, Plaintiff will aver only that the tooth fairy, and certainly not his mother, nor her estate has not been paying his rent at the same address since, and that Plaintiff now earns enough to support himself above the poverty line. Note the paid-for filing fee.  For the past several years, Plaintiff's income has been artificially deflated due to his providing substantial, end-of-life care for his mother.

h.   "The [**Gambit: The NY Times Blog**] job went to Dylan McClain. I applied for the job but didn't get it. I'll sue the NY Times for discrimination." (Mottershead, #304673).  Also at issue in this case is a recent posting to that blog approved by McClain.

i.   "Evans is senile and can't write anymore. Parr ghost writes for him for 50% fees. That's why Parr is pissed because he lost a monthly paycheck for ranting about Fischer. What a fucking pig. Byrne resigned and so should Evans. Bring on young cunts like Irina, Beatriz or Jennifer." (Mottershead, #304674).

j.   "It has been confirmed by Goichberg, Channing and Schultz that Sloan raped young boys." (Mottershead, #304717).

k.   "I'll run [for USCF Board] if someone pays my USCF membership and $250 filing fees." (Mottershead, #304718).   This post was made in response to a posting by Nemmers that claimed Plaintiff, among other things, was "typing badly at fictitious law firms."

l.   "Jennifer Shahade aka the Chess Bitch got her job as a payoff from Don Schultz to her brother Greg Shahade. How many other people were interviewed for the position of web editor? Was the position ever announced? Was it ever advertised? I'm positive it didn't. It's clear that this was an illegal political move by Don Schultz, Joel Channing, and Bill Goichberg." (Mottershead, #306146).  (Signed and posted as "Sam Sloan").

m.   "Didn't you [Sloan] say you want to stick your manhood inside Marinello's private part? Which is your favorite? Mouth, pussy or asshole? As a candidate for the election, you need to address these important issues." (Mottershead, #306495).

n.   "Did she [Jennifer Shahade] have sex with Beatriz Marinello?  You claimed you wanted to fuck Jennifer Shahade, Laura Ross and Chimi Batchimeg. Did you succed? The USCF members have the right to know." (Mottershead, #306496).

o.   "Are you telling me you wouldn't fuck her [Jennifer Shahade] if you have a chance? Get real!." (Mottershead #306502).

p.   "Shit! He's gay? Hey Marcus, don't come near me or I'll cut your balls off." (Mottershead #306508).

q.   [SUBJECT: "Fake Sloan is the Real Sloan] "I've concluded that the Fake Sloan is indeed the Real Sloan trying to get attention for re-election. He's trying to make people feel sorry for him so he can get re-elected. He's totally busted!" (Mottershead, #307153)

r.   "Sloan is trying very hard to convince people that he's not the fake Sloan. But everyone knows that he's the same person starving for attention. He had his girlfriend posted things from NY on his behalf." (Mottershead, #307157).

s.   [SUBJECT: "Sam Sloan faked his own identity"] Sam Sloan lives for attention. He faked his own identity to get sympathy and attention from everyone. This is also a trick to leak information from Don Schultz. That's why Schultz refused to attack and ban Sloan. They deserve each other. Everyone knows their tricks."

9

(Mottershead, #307169; <u>see also</u> #307188-90; #307202; and #307379 for similar claims from imposter that Sloan "impersonated" himself).

### The 2007 USCF Board Elections

22.   After February 16, 2007, the FSS ceased impersonating Plaintiff, but would

resume on March 30, 2007, continuing until July 16, 2007, after the election was over.

Following are relevant statements posted by the imposter, as Plaintiff, during that time:

a.   [SUBJECT: "Tips on how to seduce women"] "Win the lottery!" (Mottershead, #309083; <u>see also</u> #309088, #309090, and #309095)

b.   "[Brian] Lafferty is a crooked lawyer. Is it true? Is it true that he overbilled his clients? Maybe we should do something about it?" (Mottershead #309112).

c.   "It really sounds good so far. Go for it. You may want to point the finger at Bill Goichberg and Joel Channing for stopping you do your job. If you blame Goichberg and Channing, you can win. Don't forget to praise Don Schultz. You and Schultz make a good team." (Mottershead, #309176; <u>see also</u> #309182).

d.   "You're a strong candidate and you should be USCF President. I support you for the board. But lying and attacking other people make you weak. Why do waste your time attacking Polgar or Berry? She'll win no matter what and he has tons of money. You need to attack people like Bauer and Lux. That's your ticket to win the election. Do you want to win or lose? Wake up my boy." (Mottershead, #309261; <u>see also</u> #309268).

e.   "Is this the same Brian Lafferty who was caught stealing money from his clients in the east coast?" (Mottershead, #309353).

f.   "I agree. The slate of Sloan, Jones, Goodall and Schultz is the best. I would vote for them too." (Mottershead, #309391; <u>see also</u> #309444, #309892, #309959, #310050, and #310078).

g.   "Yeah, and I'm the best seduction method on the planet!" (Mottershead, #309445).

h.   [SUBJECT: "I hereby suspend Polgar from the USCF"] "I don't want her to win the election. She'll probably ban my friend Sam Sloan. A woman has no business being in charge. Vote for Sam Sloan, Don Schultz, Stephen Jones and Mike Goodall to keep things the way are. We don't need any stinking change." (Mottershead, #309557; <u>see also</u> #307559, #309614, and #309691).

i.   "Is this guy [Lafferty] for real? Is he the biggest asshole ever? I heard that he screwed old ladies out of money before. Is it true?" (Mottershead #309619; <u>see also</u> #309810).

j.   "Donna Alarie used to be the scholastic coordinator for the USCF before Diane Reese. She lasted on this job for 1 month before she was fired. That's why she hates everyone and is out to sink this federation. What a bitch! Her gay boyfriend Brian Lafferty is helping her do this. They're Leroy Dubeck's puppets to destroy

10

Bill Goichberg." (Mottershead, #309624).

k.    [SUBJECT: "Vote against Goichberg."] "I would definitely vote against anyone that Goichberg recommends." (Mottershead, #309756).

l.    "Everyone should vote against anyone Bill Goichberg recommends. Goichberg recommends Don Schultz who is known to leak info to Sam Sloan. He recommends Stephen Jones who is endorsed by Brian Lafferty, a lawyer who wants to sue the USCF and its members. He recommends Joe Lux who is against scholastic training and who has no management or business experience. Goichberg is one of the reasons why Sam Sloan is elected. Goichberg has no comprehension of the word conflict of interest running CCA and the USCF." (Mottershead, #309758).

m.    [SUBJECT: "Candidates who molest children"] "There are at least 2 candidates in the uscf election who are known to have inappropriate sexual contacts with minors. Who are they?" (Mottershead, #309875; see also #309898, #309901, #309902, #309905, #309909, #310044).

n.    "Put hot chicks with big tits like Shahade and Marinello on TV. They take off their shirts and the ratings till zoom." (Mottershead, #309920).

o.    "Gregory Alexander said "I assure you, from this moment forward; I will never do business with you. Don't call me, don't write personal letters to me again Hal. Our friendship is terminated."   Smith said: "I wouldn't recommend anyone do business with him. If this is how he handles confidential information, just imagine what Chess Magnet School might do with your personal information." These people said never to do business with chessmagnetschool.com. They don't trust Hal Bogner. Why not? Is he as bad as they said?" (Mottershead, #309924).

p.    "I see you are making fun of [Defendants] Paul [Truong] and Susan [Polgar]. These are two people who have done much to raise chess above a hobby level. Their impact with the school system and scholastic chess, and having such a high profile of main-stream media coverage and articles published; has been perhaps the most successful coverage of chess in the media, since the Fischer era. (Mottershead, #310069). (Signed: "J.W.").

q.    [SUBJECT: "Ray Gordon is a moron"] "Hey moron [Plaintiff], Fischer was in the Philippines in 1997. He was in Hungary in 1992-1994. Did you [Plaintiff] even bother to check his website before your opened your mouth? Does your dick get hard when you dream about blowing your boyfriend?" (Mottershead, #310507).[6]

r.    [SUBJECT: "Brian Lafferty caught having sex with a minor"] "Brian Lafferty, a well known attorney, was caught having sex with an 11 year old donkey. More news to come on www.samsloan.com."

s.    [SUBJECT: "Brian P Lafferty is a lying scumbag"] "Many people said that Lafferty is one of the most dishonest people on the USCF forums. They said he's done nothing for chess except making legal threats and insult people."

_____

[6] This post was in response to Plaintiff noting that Defendant Polgar and her family housed American fugitive Robert J. "Bobby" Fischer in 1997.

(Mottershead, #311775).

23.   In the 2007 election, Defendants Truong and Polgar were elected to the USCF Board of Directors, while former Defendant Sloan was defeated, and thus removed from the Board.

## FSS Postings From September 8-26, 2007

24.   On or around September 8, 2007, Plaintiff had made it clear on USENET that he did not intend to file his Title VII case against USCF.  He had been issued his right-to-sue letter on May 29, 2007 or June 12, 2007, and believed he had until September 12, 2007 to file suit. Nonetheless, he had no evidence that USCF or its officers were behind the FSS postings.

25.   Immediately after USCF had reason to believe it was "in the clear" concerning Plaintiff, the FSS resumed his conduct  Following are relevant statements from the postings, with citations to the Mottershead Report:

    a.  [SUBJECT: "Brian Lafferty, Sam Sloan and Marcus Roberts in a threesome"]  No. You're a part stupid, and part gay. Have Brian Lafferty shove his dick in your face and Sloan's dick up your ass. You'll enjoy it." (Mottershead, #313656).

    b.  ["SUBJECT: "Brian Lafferty, Sam Sloan and Marcus Roberts in a threesome"]  "No. You're a part stupid, and part gay. Have Brian Lafferty shove his dick in your face and Sloan's dick up your ass. You'll enjoy it." (Mottershead, #313656).

    c.  "I agree with her. Asshole like you [Sloan] should have been banned and thrown in jail long ago you sick pervert child molestor." (Mottershead, #313687).

    d.  "That's right. I'm [the imposter is] also Randy Bauer, Joel Channing, Rodney Vaughn, Terry Vibbert, Marcus Roberts, Bill Brock and everyone else who thinks you're [Sloan a despicable child molestor. Keep guessing you little cunt." (Mottershead, #313697).[7]

    e.  [SUBJECT: "Actions against Sam Sloan for molesting children"] "Who gives a shit about your forum? Nobody posts there anyway. Perhaps they can put you in jail for molesting young girls." (Mottershead, #313719).

    f.  "Just look for Sam Sloan's name in the sex offenders registry." (Mottershead, #313920).

---

[7] This post was in response to an accusation by Defendant Sloan that Defendant Truong was the imposter and author of a previous post attributed to Plaintiff.

12

   g.  He doesn't want people to know that you're [Sloan] a child molester, a pervert, an asshole, a bum and a total LOSER. I live with my mother[8] but at least I don't fuck kids like you.

   h.  ["SUBJECT: Sam Sloan soliciting 8 year old girls"].  "This is a great idea. I wish I had thought of it....Can I solicite these girls? If I can then I'm all for it." (Mottershead, #314098; see also #314101, and #314110).

   i.  [Subject: Did Hal Bogner and Brian Mottershead hacked USCF members' accounts?] Is it possible for these 2 crooks to hack into the USCF computers? Does this mean that Hal Bogner will do the same with customers of ChessMagnetSchool.com? Can they steal members' credit card information and rob them? Does anyone know the answer? (Mottershead, #314435; see also #314436).  (Posted as Plaintiff, what is known as a "setup question")

   j.  "There is a pattern of confidentiality breeches within the USCF....Unfortunately, there are individuals within the USCF that do not like criticism, and once a whistle blower has made an internal complaint, lawsuits are threatened after the complaint." (Mottershead, #314456).  (Posted as Plaintiff in response).  (Emphasis added)

## The Mottershead Report

26.  On October 6, 2007, the "real" Sam Sloan filed a multiclaim lawsuit against numerous defendants, Sloan v. Truong et al., S.D.N.Y #07-8537,  including Defendants USCF, Polgar, Truong, Channing, and Goichberg.  The basis of this lawsuit was the "Mottershead Report," a report by Brian Mottershead, a computer volunteer with USCF.  The original Mottershead Report, its executive summary, and conclusions, were Exhibit C to the original complaint, and is in possession of all parties and the Court, and is incorporated by reference as if fully stated verbatim herein.

27.  Following are excerpts from the Mottershead Report conclusions which are relevant to this action:

   a.  Starting in June 2005, posts have appeared on Usenet newsgroups under the aliases of "samsloan", "Ray Gordon", "Jackass Lafferty", "AndrewZito", and "judgementday@clerk.com", as well as others. The posts on rec.games.chess.politics alone number in the thousands, and were cross-posted on several other Usenet newsgroups, rec.games.chess.misc, other rec.games.chess newsgroups,alt.chess, and others. (Mottershead Conclusions, p. 1).

---

[8] Plaintiff's mother died on July 26, 2007.  He filed a pleading the next day seeking an extension of time in another lawsuit; thus, this was a matter of public record.

b.    In addition to impersonating Sam Sloan and Ray Gordon (who are real participants in the newsgroups) as well as others, these posts, which will be referred to here collectively as the Fake Sam Sloan (FSS) posts, attacked and/or libelled the USCF, Sam Sloan, Ray Gordon, Brian Lafferty, Bill Goichberg, Erik Anderson, Beatriz Marinello, Hal Bogner, Paul Hoffman, Jennifer and Greg Shahade, and numerous other officials, sponsors, staff, and members of the USCF in language that was frequently extremely profane, obscene, indecent, racist, and misogynist.

c.    My [Mottershead's] conclusion, based on the evidence available to me, is that one person was responsible for all of the Fake Sam Sloan identities and the posts under those identities on Usenet, and that this person was Paul Truong, now a member of the USCF Executive Board. Many of the posts were made after December 2006, when Paul Truong became a candidate in the election for the USCF Executive Board. Some of the targets of the posts were other candidates in the election. Some of the posts have been made since August, when Paul Truong and his wife, Susan Polgar, became members of the USCF Executive Board.

28.   Prior to reading the Mottershead Report, Plaintiff had no means of obtaining the information in its conclusions, as he did not have the insider access to the USCF Forums which would have been necessary to match the IP addresses of the imposter's USENET and USCF posts, i.e., the "smoking gun."

29.   Immediately after publication of the Mottershead Report, Defendant USCF, led by Defendants Goichberg and Channing, began targeting Mr. Mottershead for allegedly violating a nondisclosure agreement (NDA).  These Defendants also refused to take a position concerning the FSS, despite the obvious IP address matchups.

## USCF v. Truong And Polgar v. USCF et al.

30.   In the past year, two additional lawsuits which relate to this matter were filed: the first was USCF v. Truong, in San Francisco, sought to enforce a subpoena of Defendant Truong relating to the FSS, and his computer records.  USCF also moved to compel discovery in Texas, but Defendant Truong has not yet complied with that request.

31.   In USCF v. Truong, Defendant USCF also alleged that Defendant Truong had come into possession of "confidential e-mails" from the USCF BINFO system, by which its

Board communicates electronically, as well as allegedly confidential attorney-client correspondence with the law firm it hired.

32.   Copies of this allegedly confidential correspondence were published to USENET anonymously.  The general flavor of the messages showed USCF and Defendant Goichberg weighing whether or not to support Truong and Polgar, and whether or not to take the position that they were the FSS.

27 Oct 2007

Joel:
Do not ever make such a suggestion to me. In email. In person. Any way.  I will not ever be part of a scheme like that. I will call the cops if you ever try to involve me again. Maybe I will do that anyway. There is a line one does not cross, and you have crossed it.  However bad a person may be in your view, that does not give a right for extreme measures. I urge you to reconsider and suggest you contact anyone else you may have phoned about (hopefully I was the only one), and convince them you were only kidding. You have known me for many years and you already know exactly how I feel about him. I hope you take this to heart and stop.  Chess is only a game and the USCF isn't irreplaceable.You must seek only legal solutions to this problem. Or spin it out for a few years, as he looks as if he is about to die, which will be the end of the matter.

Regards,
xxxxxxxxxxxxxxxxxx

33.   As this e-mail between Defendant Channing and an unnamed individual involved solicitation for criminal conduct (harming Sloan), it is not protected.  The mail can be authenticated via discovery, and is relevant as it demonstrates retaliatory animus by the Defendants.

34.   In Polgar v. USCF et al, N.D.TX #08-0169, Defendant Polgar asserted that the defendants in that lawsuit (including Defendant Goichberg) had conspired to destroy her career out of "jealousy."  This case was removed to federal court by the Defendants.  Defendant Channing was not named in this suit.

15

35.   In its motion to dismiss <u>Polgar v. USCF</u>, Defendant USCF shed a great deal more light on the FSS matter.  The following averments are taken from that motion.

    a.    When Sam Sloan sued the USCF and many of its board members and alleged that at least two of its board members ([Polgar] and her husband) had done such alleged bad acts, it put the USCF in a delicate situation as it was faced with the situation where a former board member was suing the USCF and its current board members… Consequently, the USCF and many other Defendants appear to be caught between a much larger conflict between [Polgar] and her husband and Sam Sloan..  (USCF MTD, ¶¶ 4-5).

    b.    In defending the Sam Sloan litigation, the USCF also formed a separate litigation subcommittee as it was unsure whether or not Susan Polgar and/or Paul Truong did the alleged acts. In investigating the allegations in Sam Sloan's lawsuit, <u>[Defendant Truong] was specifically asked to deny having any involvement with the fake Sam Sloan postings, and Paul Truong refused to so specifically deny the accusations in writing…</u> If they were truly innocent, one would have thought that Susan Polgar and Paul Truong would have cooperated and/or better cooperated in the investigation of the claims and in defense of the claims being made by Sam Sloan.. (<u>Ibid</u>, ¶ 6-7).  (Emphasis Added).

36.   Defendant USCF's <u>own words</u> and its own actions demonstrate its own belief that Defendants Truong and Polgar were the FSS.  Discovery (of nonprivileged documents) will demonstrate that this is a strong belief, and that it was held long before Defendant USCF's "investigation" of the FSS issue.

37.   Plaintiff avers, upon information and belief, that Defendant USCF, via Defendants Channing and Goichberg, acting in their official capacities, a) knew all along that the FSS was Defendant Truong; b) would have denied and covered this up had there been any chance of doing so; and c) investigated the matter only to determine the most politically expedient position to take.  When d) this resulted in making Defendants Truong and Polgar the "fall guys," that lead to the multijurisdicational battle-royale that is weeding the judiciary.

38.   As averred by Mr. Sloan in <u>Sloan v. USCF et al</u>, his many efforts to get Defendant USCF, via Defendants Channing and Goichberg, and the Board, to identify the FSS were met with resistance and counterattack.  The evidence upon which the findings in the

16

Mottershead Report are based could have easily been discovered had the Board willed it, yet they did the opposite.

## COUNT I: LIBEL AGAINST ALL DEFENDANTS

39.   Plaintiff incorporates  by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-38 above.

40.   Plaintiff avers, upon information and belief, that Defendants Truong and Polgar, combined, were the "Fake Sam Sloan," and impersonated Plaintiff in all of the several hundred messages referenced by the Mottershead Report (paragraph 27) and set forth in paragraphs 14, 16, 21, 22. and 25.

41.   All of the several hundred or so impersonations of Plaintiff cited in the Mottershead Report were made for the purpose of portraying him in a negative, false light.  Each such posting was factually inaccurate in that they were not authored by Plaintiff.

42.   At the time of publication, Defendants Truong and Polgar either knew, or should have known, that they were not Plaintiff.

43.   The imposter postings were anything but benign, and were made with the intent of causing emotional distress to and inciting third parties, in the hope that those third parties would retaliate against Plaintiff.  Many of these postings were highly harassing and threatening, and well beyond anything Plaintiff would ever have posted himself.

44.   Several of the imposter postings included direct misstatements of fact concerning Plaintiff, including:

a)    That Plaintiff's mother had evicted him, and that he had "no job and no money" (paragraph 21(f)).

17

b)   That Plaintiff lived with his mother, who, at the time of publication, had died weeks earlier, which was known to this court and the public record the next day. (Paragraph 25(g))

c)   That Plaintiff "wishes he had thought of" soliciting eight year-old girls. (Paragraph 25(h)).

45.   At the time of publication, Defendants Truong and/or Polgar either knew, or should have known, that a) Plaintiff was and has been employed at all relevant times; b) was not living with his mother after she had died; and c) that he never "wished he had thought of" soliciting eight year-old girls.

46.   Plaintiff avers, upon information and belief, that Defendants Truong and Polgar acted with common-law malice towards Plaintiff, secondary to previous remarks Plaintiff had published concerning Defendant Polgar.

47.   Plaintiff avers, upon information and belief, including but not limited to the temporal proximity between Plaintiff's e-mails with Defendant Channing, that Defendants Polgar and Truong began impersonating Plaintiff at the request of Defendant Channing, for the purpose of retaliating against Plaintiff because he elected to exercise his rights under antidiscrimination laws, including Title VII.

48.   Plaintiff further avers, upon information and belief, including but not limited to the verified allegations in Sloan v. USCF et al, that Defendant Channing was acting at the request of Defendant Goichberg, functioning as a "middleman" who would ensure that Defendant Goichberg escaped liability.

49.   All postings made by Defendants Truong and Polgar, on or after September 8, 2007, were made while they were serving as officers of Defendant USCF.

50.   For the reasons set forth in paragraphs 48-50 above, Defendants Goichberg, Channing, and USCF are also liable (either directly or vicariously) for the actionable postings which form the basis of this claim.

51.   The statements were communicated to third parties, both directly via USENET, and to anyone who entered Plaintiff's name into a search engine, via the search results.

52.   The defamatory meaning of the statements, and that they were concerning Plaintiff, was readily apparent to and easily understood by the third parties.

53.   The statements were not privileged.

54.   The statements were made with knowledge of falsity or reckless disregard for the truth.

55.   As a direct and proximate result of the statements, Plaintiff has suffered irreparable pecuniary and nonpecuniary harm, including, but not limited to, a) loss of personal reputation, b) loss of employment reputation (including but not limited to Defendant Channing's reaction to the imposter statements); c) loss of chess reputation (Plaintiff writes about and teaches chess); d) loss of income and revenue relating to chess; e) loss of enjoyment of life, f) alienation from third parties which would not otherwise have occurred, and g) pain and suffering. This harm cannot be redressed without damages and injunctive relief from this court.

56.   Plaintiff avers that each imposter posting constitutes a separate act of libel. Alternatively, he avers that each posting constitutes a separate, false-light invasion of his privacy, and states this claim on these bases.

57.   For the actionable conduct cited in this count, Plaintiff is entitled to unspecified compensatory damages, in an amount to be determined at trial.

58.   Because the conduct was willful, wanton, intentional, and made with common-law malice, Plaintiff is entitled to punitive damages.

59.   Plaintiff is further entitled to costs of suit, injunctive relief sufficient to terminate the enterprise, and such other and further relief as this Court deems necessary and just to make Plaintiff whole.

## COUNT II: GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

60.   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-59 above.

61.   Brian Mottershead was not the only individual within USCF who had the ability to identify Defendants Truong and Polgar as the FSS.  All that was required, at any time the imposter was posting, was to match up the IP addresses between the USENET postings and the USCF Forum postings.  The USCF forum requires users to log in, which allows a post to be linked to not only the IP addresses of its author, but also the author's name.

62.   As USCF President, Bill Hall could and should have directed a "Mottershead" style investigation of the FSS, once Mr. Sloan made his concerns about the imposter known, especially since the FSS was obviously posting to influence the 2006 and later 2007 elections.  In addition to Hall, any paid computer staffer, such as Mike Nolan, could also have investigated.

63.   As USCF Board members, Defendants Channing and Goichberg could and should have joined with Mr. Sloan to investigate the FSS, but instead, did everything within their influence to block or stop any such investigation.   As Board members, Defendants Truong and Polgar could and should have cooperated.

64.   Defendant USCF does business within the Commonwealth, and owes a legal duty to the public, including Plaintiff, to prevent it from foreseeable harm attributable to its business operations.  Plaintiff avers that this duty was intentionally breached by all Defendants, to the point of depraved indifference to his well-being, or his rights.

65.   The gross negligence that is the basis for this count caused and exacerbated all other damages from all other counts, and caused Plaintiff to endure <u>criminal</u> internet harassment[9] for a year or more longer than he should have, and, due to the volition of the defendants, at all.

66.   For the conduct cited in this count, and for each and all defendants, Plaintiff is entitled to relief under the Pennsylvania tort of gross negligence, and states this claim on that basis.

67.   Plaintiff is entitled to compensatory damages, punitive damages, costs of suit, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court deems necessary and just to make Plaintiff whole.

## COUNT III: SIMPLE NEGLIGENCE AGAINST ALL DEFENDANTS

68.   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-67 above.

69.   This count is pled in the alternative to Count II above, for any negligent conduct which does not rise to the level of gross negligence.   Identical relief to that claim is sought.

## COUNT IV: LANHAM ACT VIOLATIONS AGAINST DEFENDANTS TRUONG, POLGAR, AND USCF

70.   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-69 above.

71.   Plaintiff is a USCF-rated "Class A" player (1900 rating), whose peak tournament rating was 2000, placing him in the top ten percent or so of all who play <u>tournament</u> chess. Plaintiff has also coached high school chess, taught talented children, and, during the times in controversy, published a free book on his website called ***Train Like A Chess Champion***.   He also sold electronic copies of his opening repertoire.

---

[9] Several criminal statutes were violated by the imposter, including Pennsylvania's hate-crime statutes, and 47 USC §223(h), which makes it a felony to harass or "annoy" someone anonymously online.

72.   Defendants Truong and Polgar are chess teachers, chess authors, and chess publishers.  Defendant USCF is a publisher and distributor of chess instructional materials.

73.   All imposter postings, especially those which occurred while Defendants Truong and Polgar were USCF board members, directly and proximately caused Plaintiff a competitive, pecuniary harm via a direct, proximate loss of goodwill, loss of book sales and opening repertoire, and loss of chess students.

74.   All defendants are liable for the imposter postings by virtue of conspiracy between the named defendants, who were acting in their capacity as officers of Defendant USCF, who is therefore also liable.

75.   Plaintiff is entitled to relief under the Lanham Act, for false and disparaging statements made in the promotion of a competitive product or service, in this case chess instruction and publication, for each impersonation of him by Defendants Truong/Polgar, and states this claim on that basis.

76.   Plaintiff is entitled to compensatory damages, punitive damages, costs of suit, attorney fees, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this court deems just and proper to make Plaintiff whole.

## COUNT V: RETALIATION UNDER TITLE VII AGAINST ALL DEFENDANTS

77.   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-76 above.

78.   The first EEOC complaint was filed by Plaintiff in November 2006, long before he was impersonated by an active USCF Board member, and indeed that right-to-sue letter had expired just prior to the September 2007 postings, just prior to the release of the Mottershead Report, which prompted Plaintiff, in July 2008, to file a second EEOC charge, which is still pending.

22

79.   This claim is based solely on Plaintiff's first EEOC charge.  If and when the second charge is adjudicated, Plaintiff will file a separate action, or amend this action, if it is still open.

80.   The impersonations of Plaintiff via USENET postings was motivated almost exclusively by Defendant Channing's animus towards Plaintiff, stemming directly from Plaintiff's exercise of his rights under Title VII and other antidiscrimination statutes.

81.   The posting by Mr. Nemmers (see paragraph 20) which referred to Plaintiff as a "fish in an barrel" and that people "like to shoot" them was made at a time when Mr. Nemmers was chair of the USCF Military Committee, and on active duty in the United States military.

82.   Retaliatory internet postings by USCF members, most notably a former tournament director named Frisco Del Rosario, have continued to appear on USENET, and in various media outlets covering the various USCF lawsuits, including the *New York Times* "Gambit" chess blog, where a John Doe, believed to be Defendants Truong and Polgar, repeated many of the same disparagements which permeate the Mottershead Report.

83.   The conduct cited in this count was materially adverse to Plaintiff, by causing him to fear for his physical safety, and to have to endure these vicious personal attacks, and defamatory imputations such as those committed by the imposter.

84.   Although the right-to-sue letter expired in September, 2007, Plaintiff's decision not to file suit was based on fraudulent concealment by all Defendants, specifically concerning the identity of Defendants Truong and Polgar as the FSS.

85.   As a direct and proximate result of Defendants' intentional, wanton conduct, Plaintiff has suffered loss of income, loss of chess revenue, loss of enjoyment of life, pain and suffering commensurate with the injury, loss of personal and professional reputation, and loss of accumulated wealth.

86.   Plaintiff is entitled to relief from all defendants under 42 USC 2000e-3, the retaliation provision of Title VII, and states this claim on that basis.

87.   Plaintiff is entitled to unspecified compensatory damages, for the harms set forth hereinabove, in an amount to be determined at trial, but not less than THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000.00).

88.   Plaintiff is entitled to punitive damages.

89.   Plaintiff is entitled to costs of suit, any subsequent and reasonable attorney fees, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court deems just and proper to make Plaintiff whole.

## COUNT VI: RETALIATION AND FAILURE TO HIRE AGAINST THE PUBLIC INTEREST UNDER THE PHRA

90.   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-89 above.

91.   Plaintiff exhausted administrative remedies under the PHRC, when the EEOC refused to dual-file his first charge, instead transferring the charge to its Nashville, Tennessee office.  Had the PHRC accepted his filing, this suit would be timely even today, as their process is slower, and the time limits for filing suit much greater than the EEOC's.  Plaintiff should therefore still have standing to file suit under the retaliation provision of the PHRA.

92.   Plaintiff bases this count on the same conduct as the Title ViI count, and seeks identical relief for this count, from all defendants, adding a claim for failure to hire against the public interest, under the PHRA.

## COUNT VII: CIVIL CONSPIRACY

93   Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-92 above.

24

94.  Defendants Truong and Polgar formed the core conspiracy to commit the tortious acts cited in the other counts.  They were acting in concert with Defendant Channing, to whom the tasks of internet retaliation against whistleblowers, including but not limited to Plaintiff and Mr. Sloan, were delegated.  The foursome were acting as officers of the USCF during all relevant times in controversy.

95.  The temporal proximity of the imposter's postings to his e-mails with Defendant Channing is sufficient evidence that Defendants Truong and Polgar were acting under his direction.  Additionally, Mr. Sloan has averred in his own verified complaint that Defendants Channing and Goichberg were well aware of Defendants Truong and Polgar's conduct.

96.  Separate from all other counts, Plaintiff is entitled to relief under the Pennsylvania tort of civil conspiracy.

97.  Plaintiff is entitled to compensatory damages unique to the conspiracy, and not sought through other counts.

98.  Plaintiff is entitled to punitive damages.

99.  Plaintiff is entitled to costs of suit, any subsequent and reasonable attorney fees, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court deems just and proper to make Plaintiff whole.

## COUNT VIII: RICO VIOLATIONS AGAINST DEFENDANTS POLGAR, TRUONG, GOICHBERG, AND CHANNING

100  Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-99 above.

101. The named defendants constitute an association-in-fact RICO conspiracy under 18 USC 1964(c), with Defendant USCF as the corrupted RICO enterprise.

102. Predicate acts include

a)  Fraud for each posting by the FSS, as set forth in the Mottershead Report.

25

b)     Libel for each posting by the FSS made under the direction of Defendant Channing, as Florida law allows for a two-year prison term for libel.

c)     Extortion under the Hobbs Act, in an attempt to induce Plaintiff to surrender his pursuit of employment with USCF, and business dealings with USCF or throughout the chess world, including but not limited to the internet.

103. Defendants Goichberg ("boss") and Channing ("consigliore") violated 18 USC §1962(a) by directing the affairs of the RICO enterprise.

104. Defendants Goichberg and Channing violated 18 USC 1962(b) by investing the proceeds of their racketeering activity, i.e., control over the USCF finances, in furtherance of the RICO enterprise.

105. Defendants Truong ("capo"), Polgar ("capo"), and Channing each violated 18 USC 1962(c) committed two or more predicate acts in furtherance of the RICO enterprise.

106. The purpose of the RICO enterprise is to destroy Defendant USCF, in order to seize power over its remaining assets and any new, replacement organization.

107. The RICO enterprise is an ongoing concern, which has been active for much longer than twelve months, and, absent enjoinment by this Court, will continue inflicting its harm on the chess world and the public at large, unfettered.

108.  For the violations of 18 USC §1962(a-d), Plaintiff is entitled to relief under 18 USC §1964(c), "civil RICO."

109. Plaintiff is entitled to compensatory damages in an amount to be determined at trial, trebled.

110. Due to the intentional nature of the conspiracy, Plaintiff is entitled to punitive damages.

111. Plaintiff is entitled to costs of suit, any subsequent and reasonable attorney fees, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court deems just and proper to make Plaintiff whole.

## COUNT IX: FRAUDULENT MISREPRESENTATION AGAINST DEFENDANTS CHANNING AND USCF

112  Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-111 above.

113. Defendant Channing made numerous misrepresentations to Plaintiff by feigning ignorance of the identity of Defendants Truong and Polgar as the FSS, <u>as he was directing their conduct</u>.

114. Plaintiff reasonably relied, to his detriment, on the above misrepresentations.

115. As a direct and proximate result of the misrepresentations, Plaintiff elected not to exercise his Title VII rights during his "right to sue," specifically because he had no reason to believe that the FSS was on the USCF Board.  This action itself was also delayed up to two years as a result.

116. Plaintiff discovered the fraud via the Mottershead Report, on or around October 6, 2007, and could not have done so earlier, even with reasonable diligence.

117. Plaintiff is entitled to relief under the Pennsylvania tort of fraudulent misrepresentation, and states this claim for relief on that basis.

118. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

119. Due to the intentional nature of the conspiracy, Plaintiff is entitled to punitive damages.

120. Plaintiff is entitled to costs of suit, any subsequent and reasonable attorney fees, injunctive relief sufficient to terminate the actionable conduct, and such other and further relief as this Court deems just and proper to make Plaintiff whole.

## PRAYER FOR RELIEF

Plaintiff seeks the following relief from this court:

1.   A finding that Defendants Truong and Polgar defamed Plaintiff by impersonating him as the "Fake Sam Sloan."

2.   A finding that Defendant Channing, and, by extension. Defendant USCF, defrauded Plaintiff by directly misrepresenting knowledge of the identity of the FSS.

3.   A finding that all defendants retaliated against Plaintiff, after failing to hire him against the public interest, due to his being a whistleblower who would expose their misdeeds.

4.   A finding of a RICO and civil conspiracy among the defendants.

5.   A finding of negligence against the Defendants, for their failure to uncover evidence which was literally right under their nose, and which would have prevented foreseeable harm to Plaintiff.

6.   For each count, or a combination of all counts, and against each defendant, or a combination of all defendants, unspecified damages in amount no less than FORTY MILLION DOLLARS ($40,000.00).

7.   Injunctive relief sufficient to terminate the actionable conduct.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a/k/a "Ray Gordon" a/k/a "Ray Gordon, Creator Of The Pivot," d/b/a Snodgrass Publishing Group,<br><br>                                    Plaintiff<br><br>                    v.<br><br>**Samuel H. Sloan** et al.,<br><br>                                    Defendants | : : : : : : : : : : | **CASE NO.:** |

## VERIFICATION

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, hereby attest and swear, under penalty of perjury, including but not limited to 28 USC §1746, and all other federal, state, and local laws relating to making false sworn or unsworn statements, that all factual averments in the preceding **Complaint** are true and correct to the best of my current knowledge and belief, by standard of preponderance of the evidence available to me at the time of averment.


October 3, 2008
Date

Gordon Roy Parker
4247 Locust Street, #119
Philadelphia, PA  19104
(215) 764-5487
E-mail: GordonRoyParker@aol.com
Plaintiff, Pro Se

*Clerk – Original*

## IN THE UNITED STATES DISTRICT COURT
## FOR EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, d/b/a Snodgrass Publishing Group, <br><br> Plaintiff <br> v. <br><br> **Samuel H. Sloan et al,** <br><br> Defendants | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **CASE NO.:** <br> **08-cv-829-JLJ** |

### CERTIFICATE OF SERVICE

I, Gordon Roy Parker, <u>Plaintiff</u> in the above-styled action, hereby certify that I have served a true and correct copy of the foregoing **Amended Complaint** on Defendants, by <u>regular mail</u>, as follows:

William T.. Salzer, Esq
Swartz Campbell, LC
Two Liberty Place, 28th Fl.
50 South 16ft Street
Philadelphia, PA 19102
Attorneys for Truong/Polgar

Wendi D. Barish, Esq
Jamie L .Sarnmans, Esq.
Weber, Gallagher Simpson.
Stapleton, Fires & Newby
2000 Market Street. 13th
Fl. Philadelphia, PA 19103
Attorneys for Joel
Channing

Anita B. Weinstein, Esq.
Cozen & O'Connor
1900 Market St. 5th Floor
Philadelphia PA 19103
Atty for Goichberg/USCF

This the 3rd day of October, 2008.

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA  19104
(215) 764-5487