**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GORDON ROY PARKER, a/k/a        : CIVIL ACTION
"Ray Gordon, Creator of the     :
Pivot," d/b/a Snodgrass         :
Publishing Group                : NO. 08-CV-829
                                :
        vs.                     :
                                :
WILLIAM GOICHBERG, PAUL TRUONG  :
SUSAN POLGAR, UNITED STATES     :
CHESS FEDERATION and            :
JOEL CHANNING                   :


<u>**MEMORANDUM AND ORDER**</u>

**JOYNER, J.**                                    **December 29, 2008**


    This case is presently pending before the Court for

disposition of: (1) the defendants' motions for dismissal of the

plaintiff's *pro se* complaint under Fed. R. Civ. P. 12(b)(2), (5)

and (6) and 12(f) (Docket Nos. 27, 28 and 29), (2) the

plaintiff's second motion to conduct jurisdictional discovery

against defendants Truong, Polgar and Channing (Docket No. 31),

and (3) Plaintiff's second motion for extension of time to

service complaint, or for alternative service by mail (Docket No.

32).  For the reasons which follow, the motions shall be granted

in part and denied in part and the complaint dismissed in its

entirety with respect to Defendants Channing, Goichberg, and the

United States Chess Federation.

<u>**History of the Case**</u>

    Plaintiff Gordon Roy Parker instituted this action by filing

a *pro se* complaint in this Court on February 20, 2008 which endeavored to state claims against these and other defendants for defamation and injurious falsehood, tortious interference, fraudulent and negligent misrepresentation, simple and gross negligence, retaliation discrimination under Title VII and the PHRA, failure to hire against the public interest in violation of the PHRA, Lanham Act violations, civil conspiracy and RICO conspiracy.  Defendants William Goichberg, Paul Truong, Susan Polgar, Joel Channing and the United States Chess Federation ("USCF") all moved to dismiss the complaint and this Court, finding that the complaint failed to satisfy the "short and plain" pleading requirement of Fed. R. Civ. P. 8(a), granted the motion with leave to the plaintiff to file an amended complaint curing the deficiencies within 30 days.  (See Order of September 2, 2008).[1]

Thereafter, on October 3, 2008, Plaintiff filed an "Amended Complaint for Libel, Gross and Simple Negligence, Lanham Act Violations, Title VII and PHRA Retaliation, Civil Conspiracy, RICO Conspiracy, and Fraudulent Misrepresentation."  Although he re-ordered the counts from his original complaint and apparently

---

[1]  We did not address moving defendants' other arguments seeking dismissal at that time, although we did caution Plaintiff "...to review Fed. R. Civ. P. 12(f) allowing a court to strike material from a pleading which is 'redundant, immaterial, impertinent, or scandalous,'" because "[a] review of Plaintiff's Complaint shows that he has alleged immaterial facts which are both scandalous and redundant in contravention of Rule 12(f)."

dropped his claims against several of the defendants,[2] the sum
and substance of Plaintiff's claims are the same and arise out of
a series of publications which commenced in or about January -
March, 2006 on the USENET internet web site by an individual
known as "the fake Sam Sloan" or "FSS".  According to the
plaintiff, this imposter attempted to make him look bad by using
Plaintiff's identity to attack female chess personalities such as
Jennifer Shahade, who had been hired as the editor for the online
version of *Chess Life*, the official magazine of the Defendant
United States Chess Federation.  The bulk of Plaintiff's Amended
Complaint is spent detailing a vast number of these posted
attacks, many of which border on the obscene.  It appears that at
various times the imposter would cease impersonating the
plaintiff only to resume on later dates.  Plaintiff also
references a number of other lawsuits that have been filed by the
individual defendants against the United States Chess Federation
("USCF") in other state courts and in other districts for
conspiracy to destroy career (Polgar v. USCF, N.D. Tex., #08-
0169), by the USCF against the individual defendants (USCF v.
Truong, San Francisco, Calif.) to enforce subpoena, and by the
individual defendants against each other (Sloan v. Truong, S.D.
N.Y. #07-8537).  The relevance of these citations is unclear but

_____

[2]  Omitted from the Amended Complaint as defendants are Samuel H.
Sloan, the Susan Polgar Foundation and the Continental Chess Association.

3

it appears that from them, Plaintiff has somehow concluded that both defendants Susan Polgar and Paul Truong have been operating as the imposter and making the internet postings under the plaintiff's name.  Mr. Parker further avers that "Defendants Polgar and Truong began impersonating him at the request of Defendant Channing for the purpose of retaliating against him because he elected to exercise his rights under antidiscrimination laws, including Title VII" and that after September 8, 2007, whenever Defendants Polgar and Truong were so impersonating him, they were serving as officers of Defendant USCF.

By way of the motions now before us, the defendants all submit that the amended complaint should be dismissed with prejudice because:

> 1.  It fails to state any valid claims upon which relief can be granted.
>
> 2.  Service was never properly effectuated and thus the Court does not have jurisdiction over them.
>
> 3. This court lacks personal jurisdiction over Defendants.
>
> 4.  The Amended Complaint, like the original Complaint, fails to comply with the mandates of Rule 8(a) and Rule 9(b).
>
> 5.  It contains scandalous and impertinent matter which should, at a minimum, be stricken.

We shall address each of these arguments in turn.

### Standards Governing Defendants' Motions to Dismiss

It is well-settled that in considering motions to dismiss

4

pursuant to Fed. R. Civ. P. 12(b)(6), the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002); Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000).  In so doing, the courts must consider whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). "It is therefore no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." Umland v. Planco Financial Services, Inc., 542 F.3d 59, 64 (3d Cir. 2008), quoting Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear that the plaintiff can prove no set of facts that would entitle him to relief, considering documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders and items appearing in the record of the case.  Buck v. Hampton Township School District, 452 F.3d 256, 260 (3d Cir. 2006).  The inquiry is not whether the plaintiff will ultimately prevail in a trial on the merits, but whether he

should be afforded an opportunity to offer evidence in support of his claim.  In re Rockefeller Center Properties, Inc., 311 F.3d 198, 215 (3d Cir. 2002).

Because lack of personal jurisdiction is a waivable defense under Fed. R. Civ. P. 12(h)(1), it is incumbent upon the defendant to challenge it by filing a motion to dismiss under Rule 12(b)(2).  See, e.g.: Clark v. Matsushita Electric Industrial Co., Ltd., 811 F. Supp. 1061, 1064 (M.D. Pa. 1993). Motions to dismiss for lack of personal jurisdiction generally require the Court to accept as true the allegations of the pleadings and construe disputed facts in favor of the plaintiff. Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Heft v. AAI Corp., 355 F. Supp. 2d 757, 761 (M.D. Pa. 2005). Once challenged, the plaintiff then bears the burden of establishing personal jurisdiction.  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007). A Rule 12(b)(2) motion is inherently a matter which requires resolution of factual issues outside the pleadings.  Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.  Weber v. Jolly Hotels, Inc., 977 F. Supp. 327, 331 (D.N.J. 1997) citing, inter alia, Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67, n. 9 (3rd Cir. 1984); Wolk v. Teledyne Industries, 475 F. Supp. 2d

6

491, 501 (E. D. Pa. 2007).  At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, the plaintiff must respond with actual proofs, not mere allegations.  <u>Weber</u>, <u>supra</u>.

Furthermore, before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must satisfied.  <u>Omni Capital International v. Rudolf Wolff & Co.</u>, 484 U.S. 97, 104, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415, 423 (1987).  "Service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."  <u>Id</u>., quoting <u>Mississippi Publishing Co. v. Murphree</u>, 326 U.S. 438, 444-445 (1946).  Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, "insufficiency of service of process" is one basis for which a defendant may seek dismissal of a complaint.  <u>Allstate Insurance Co. v. Funai Corp.</u>, 249 F.R.D. 157, 160 (M.D. Pa. 2008).  In a motion under Rule 12(b)(5), "the party asserting the validity of service bears the burden of proof on that issue."  <u>Id.</u>, quoting, *inter alia,* <u>Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.</u>, 988 F.2d 476, 488 (3d Cir. 1993).

Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to

either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process.  Umbenhauer v. Wooq, 969 F.2d 25, 30 (3d Cir. 1992).  However, dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.  Id.  In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service.  Id.; Tiggett v. New Jersey National Guard, Civ. A. No. 90-2265, 1990 U.S. Dist. LEXIS 15673 at *23 (E.D. Pa. Nov. 20, 1990), citing National Expositions, Inc. v. DuBois, 97 F.R.D. 400, 403 (W.D. Pa. 1983).

## Discussion

A.  Failure to Plead Claims for Which Relief May be Granted.

As noted, Defendants contend that the amended complaint must be dismissed in its entirety because the plaintiff fails to allege any viable causes of action.

1.  *Federal Claims for Lanham Act Violations.*

In count IV of his amended complaint, Mr. Parker purports to assert a claim under the Lanham Act, 15 U.S.C. §1051, *et. seq.* against Defendants Truong, Polgar and the USCF "for false and disparaging statements made in the promotion of a competitive product or service, in this case chess instruction and publication, for each impersonation of him by Defendants Truong/Polgar..."  (Amended Complaint, ¶75).

Under §43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1):

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

    **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

By containing such broad language, the Act "proscribes not only trademark infringement in its narrow sense, but more generally creates a federal cause of action for unfair competition." A T & T Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1428 (3d Cir. 1994), quoting, *inter alia*, Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd., 40 F.3d 1431, 1438 (3d Cir. 1994), American Greetings Corp. v. Dan-Dee Imports, Inc., 807 F.2d 1136, 1140 (3d Cir. 1986). This is so as to protect the remedial nature of the Act which is, in essence to "prevent customer confusion that enables a seller to pass 'off his goods as the goods of another.'" Barmasters Bartending School v. Authentic Bartending School, 931 F. Supp. 377, 384 (E.D. Pa. 1996); First

<u>Keystone Federal Savings Bank v. First Keystone Mortgage</u>, 923 F.
Supp. 693, 705 (E.D. Pa. 1996), quoting <u>Lang v. Retirement Living
Publishing Co.</u>, 949 F.2d 576, 582 (2d Cir. 1991).   In order to
succeed on such a claim, the plaintiff must ultimately prove, by
a preponderance of the evidence that:

> (1) the defendants use a false designation of origin;

> (2) that such use of a false designation occurs in
> interstate commerce in connection with goods and services;

> (3) that such false designation is likely to cause
> confusion, mistake or deception as to the origin,
> sponsorship, or approval of Defendant's goods or services by
> another person; and

> (4) that Plaintiff has been or is likely to be damaged.

<u>Parker v. Google</u>, 242 Fed. Appx. 833, 2007 U.S. App. LEXIS 16370,
(3d Cir. July 10, 2007); <u>AT& T v. Winback</u>, <u>supra</u>, citing 3
*McCarthy on Trademarks* §27.03[1][a] at 27-21.

In applying the preceding authorities to Count IV of the
amended complaint in this case, we find that it fails to state a
viable claim for relief under the Lanham Act.   Notwithstanding
the conclusory allegation in paragraph 75 (recited above), the
gravamen of plaintiff's amended complaint is that beginning on
March 17, 2006 and continuing off and on until late September,
2007, Defendants Polgar and Truong, masquerading as the "fake Sam
Sloan" impersonated him in a large number of online postings via
USENET's message boards.   Mr. Parker also avers that he himself
"peaked as a USCF-rated Expert," that he "specializes in and

10

teaches chess openings" and "has published books on many topics, including chess and seduction (relationships)...," "... coached high school chess, taught talented children, ... published a free book on his website..." and that at the time they authored some of the postings, Polgar and Truong were members of the USCF board.  (Amended Complaint, ¶s1, 3, 71, 73).  Although the amended complaint further recites *verbatim* and at length a vast number of the online postings which are the basis of this civil action, we note that those postings, while obscene, involve only opinionated personal attacks on various other individuals who are presumably well-known within the chess world.  No mention is made of any goods or services belonging to or offered by the plaintiff such as is necessary to state a claim for unfair competition under the Lanham Act.  Thus while other people may have mistakenly believed that it was the plaintiff Parker and not the defendants who authored these personal attacks and while the defendants may have intended that Mr. Parker himself would be held in low esteem by the members of the audience who read the postings, there is nothing in the amended complaint that suggests that the defendants were falsely designating the origin of any goods and/or services which properly belonged to the plaintiff. Count IV shall therefore be dismissed with prejudice.

   *2.  Federal RICO Claims Against Polgar, Truong, Goichberg and Channing*

   RICO provides for civil actions in which treble damages and

attorney's fees may be recovered to vindicate "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter..."  18 U.S.C. §1964(c); <u>Rotella v. Wood</u>, 528 U.S. 549, 552, 120 S. Ct. 1075, 1078, 145 L. Ed. 2d 1047, 1053 (2000).  There are four possible ways to violate section 1962, which reads as follows:

> **(a)**   It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

> **(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> **(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Congress enacted Section 1962(a) in an attempt to halt investment of racketeering proceeds into legitimate businesses, including the practice of money laundering. Brittingham v. Mobil Corp., 943 F.2d 297, 303 (1991). Because §1962(a) is directed specifically at the use or investment of racketeering income, it requires that a plaintiff's injury be caused by the use or investment of income in the enterprise. Id. Thus, to adequately plead a §1962(a) claim, the plaintiff must allege an injury stemming from the defendant's use or investment of income garnered from racketeering activity, distinct from an injury flowing from the predicate racketeering acts or allegedly fraudulent activities. Kolar v. Preferred Real Estate Investments, Inc., Civ. A. No. 07-03864, 2008 U.S. Dist. LEXIS 48781 at *11 (E.D. Pa. June 19, 2008), citing, *inter alia*, Glessner v. Kenney, 952 F.2d 702, 709 (3d Cir. 1991) and Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991). Stated otherwise, the plaintiff must allege (1) that the defendant received money from a pattern of racketeering activity and (2) invested that money in an enterprise that (3) affected interstate commerce. Ransom v. Marazzo, 814 F. Supp. 437, 441 (1993).

Under §1962(b), a plaintiff must allege a specific nexus

between control of a named enterprise and the alleged
racketeering activity.  Kehr Packages, 926 F.2d at 1412.  A
violation of §1962(c) requires (1) conduct (2) of an enterprise
(3) through a pattern (4) of racketeering activity.  Sedima
S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S. Ct. 3275,
3285, 87 L. Ed. 2d 346 (1985).  In order to state a viable claim
under that subsection, a plaintiff is required to plead: (1) the
existence of an enterprise affecting interstate commerce, (2)
that the defendant was employed by or associated with that
enterprise, (3) that the defendant participated, either directly
or indirectly in the conduct of the affairs of the enterprise and
(4) that the defendant participated through a pattern of
racketeering activity that must include the allegation of at
least two racketeering acts.  Hollis-Arrington v. PHH Mortgage
Corp., 2006 U.S. App. LEXIS 27021 at *13-*14, 205 Fed. Appx. 48,
53 (3d Cir. Oct. 31, 2006); Annulli v. Panikkar, 200 F.3d 189,
198 (3d Cir. 1999).

    Finally, to plead a cause of action under §1962(d), a
plaintiff must aver that: (1) there was an agreement to commit
the predicate acts of fraud, and (2) defendants had knowledge
that those acts were part of a pattern of racketeering activity
conducted in such a way as to violate §1962(a), (b) or (c).
Tyler v. O'Neill, 994 F. Supp. 603, 615 (E. D. Pa. 1998).

    Instantly, the plaintiff's attempt to state claims for

14

violations of all four of the subsections of Section 1962 in count VIII falls far short.  For one, despite the conclusory averments that "Defendants Goichberg and Channing violated 18 U.S.C. §1962(b) by investing the proceeds of their racketeering activity, i.e. control over the USCF finances, in furtherance of the RICO enterprise," there are absolutely no *facts* alleged that the defendants received money as a result of their alleged control of USCF finances from a pattern of racketeering activity which they in turn invested in a RICO enterprise[3] nor are there any averments of any type of connection or nexus between the defendants' control of the USCF and the purported racketeering activity.  Thus, the plaintiff fails to allege viable causes of action under RICO Sections 1962(a) or (b).

Furthermore, the predicate acts upon which the amended complaint is premised are:

(a) "[f]raud for each posting by the FSS, as set forth in the Mottershead Report";

(b) "[l]ibel for each posting by the FSS made under the direction of Defendant Channing, as Florida law allows for a two-year prison term for libel," and

(c) "[e]xtortion under the Hobbs Act, in an attempt to induce Plaintiff to surrender his pursuit of employment with USCF, and business dealings with USCF or throughout the chess world, including but not limited to the internet."

(Am. Compl., ¶102).   Under 18 U.S.C. §1961(1), "racketeering

---

[3] Plaintiff submits that "Defendant USCF [is] the corrupted RICO enterprise."  (Am. Compl., ¶101).

15

activity" is defined to mean "...any act or threat involving

murder, kidnaping, gambling, arson, robbery, bribery, extortion,

dealing in obscene matter, or dealing in a controlled substance

or listed chemical (as defined in section 102 of the Controlled

Substance Act), which is chargeable under State law and

punishable by imprisonment for more than 1 year," and as

consisting of certain enumerated offenses under Title 18 of the

United States Code.

In reviewing these enumerated offenses, we note at the

outset that libel is not among them and that the Hobbs Act, 18

U.S.C. §1951(a) "says that an individual commits a federal crime

if her or she 'obstructs, delays, or affects commerce' by (1)

'robbery' (2) 'extortion,' or (3) 'committing or threatening

physical violence to any person or property in furtherance of a

plan or purpose to do anything in violation of this section.'"

Scheidler v. National Organization for Women, 547 U.S. 9, 126 S.

Ct. 1264, 1268, 164 L. Ed. 2d 10 (2006).  "The term 'extortion'

means the obtaining of property from another, with his consent,

induced by wrongful use of actual or threatened force, violence,

or fear, or under color of official right."  18 U.S.C.

§1951(b)(2).  Given that there is nothing in the plaintiff's

pleadings from which we could plausibly infer that the defendants

threatened to or actually physically harmed the plaintiff in

order to obtain some property from him or that commerce was in

any way affected by the defendants' alleged acts, we find that he has failed to state a §1962(c) claim under these theories.

Moreover, giving Plaintiff the benefit of the doubt that the "fraud" of which he is complaining constitutes mail and/or wire fraud, we find he has not stated a §1962(c) claim for this offense either.  To be sure, both the mail and wire fraud statutes require: (1) that the defendant devised or intended to devise (2) a scheme or artifice to defraud, (3) the use of the mails or wires for the purpose of executing or attempting to execute the scheme or artifice, and (4) knowledge by the defendant of that use.  United States Payment Processing Center, LLC, Civ. A. No. 06-725, 2006 U.S. Dist. LEXIS 75715, n.1 (E.D. Pa. Oct. 18, 2006); Philadelphia Reserve Supply Co. v. Nowalk & Associates, 864 F. Supp. 1456, 1470-71 (E.D. Pa. 1994), both citing, *inter alia*, Kehr Packages v. Fidelcor, 926 F.2d 1406, 1413-1414 (3d Cir. 1991).  Count VIII fails to plead any facts which suggest these elements, nor is there anything in the amended complaint to suggest a true pattern of racketeering activity that affected interstate commerce.  Again, the gist of the amended complaint is the offensive, obscene message board postings by Defendants Polgar and Truong masquerading as the plaintiff and given Plaintiff's failure to plead valid claims under §§1962(a), (b) or (c), he likewise fails to assert a cause of action under section 1962(d).  Count VIII must therefore be

17

dismissed.

### 3.   Federal Claims Under Title VII

Count V of Mr. Parker's amended complaint purports to plead a cause of action against all of the defendants for retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-3.

Count V is extremely difficult to understand.  At first, the plaintiff acknowledges that his right-to-sue letter expired "just prior to the September 2007 postings, just prior to the release of the Mottershead Report," but he then contends that the release of the Mottershead Report prompted him, "in July 2008, to file a second EEOC charge, which is still pending."  (Am. Compl., ¶78). He then goes on to aver that "[t]his claim is based solely on Plaintiff's first EEOC charge," that "[i]f and when the second charge is adjudicated [he] will file a separate action, or amend this action, if it is still open," and then further complains of a variety of alleged comments and actions by a variety of persons, some of them the defendants and some not.

In addition to Plaintiff's acknowledgment that his Title VII claims are barred by virtue of the expiration of his right-to-sue letter,[4] we note that **nowhere** in the amended complaint does

---

[4] The timely filing of a charge of discrimination with the Equal Employment Opportunity Commission or the Pennsylvania Human Relations Commission and the exhaustion of the remedies available from these administrative agencies are threshold requirements to filing a private lawsuit under both Title VII and the Pennsylvania Human Relations Act.  See, 42 U.S.C. §2000e-5; 43 P.S. §962(b).  Under Title VII, a charge must be filed within 180 days of the alleged unlawful employment practice (or within 300 days if the charge is first filed with a state agency) and suit may not be instituted unless and until a right-to-sue letter has issued from the Commission.  42

plaintiff ever allege that **he was ever employed by or sought employment with any of the defendants** nor does he aver that he engaged in activity that was protected by Title VII, that the defendants took an adverse employment action against him or that there was a causal connection between the protected activity and the adverse employment action.   See, <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340-341 (3d Cir. 2006).  For these reasons and given that the goal of Title VII is the redress of unlawful employment practices, including retaliation, it is clear that the plaintiff has failed to state a claim upon which relief may be granted in Count V.   See, e.g., 42 U.S.C. §§2000e-2, 2000e-3.

<u>       </u>*4.   State Law Claim under the PHRA*

     In count VI, Mr. Parker purports to assert a claim for "retaliation and failure to hire against the public interest under the PHRA" which he "bases ... on the same conduct as the Title VII count, and seeks identical relief for this count, from all defendants..."  (Am. Compl.. ¶92).

     Indeed, retaliation is also proscribed under Pennsylvania state law in the Pennsylvania Human Relations Act, 43 P.S. §955 as follows:

     It shall be an unlawful discriminatory practice, unless
     based upon a bona fide occupational qualification, or in the

---

U.S.C. §2000e-5(e)(1).  Upon receipt of the right-to-sue notice, a complainant has 90 days to file a private civil action.  42 U.S.C. §2000e-5(f)(1).

case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

...

(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified, or assisted, in any manner, in any investigation, proceeding or hearing under this act.

The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.  <u>Scheidemantle v. Slippery Rock University of the State System of Higher Education</u>, 470 F.3d 535, 539, n.5 (3d Cir. 2006); <u>Weston v. Commonwealth of Pennsylvania, Department of Corrections</u>, 251 F.3d 420, 426, n.3 (3d Cir. 2001).  As there is likewise no suggestion that he ever applied for employment with or was ever employed by the defendants or that he engaged in some type of activity protected by the PHRA, we are constrained to dismiss count VI for failure to state a claim upon which relief may be granted under Rule 12(b)(6) for the same reasons that we dismiss count V.[5]

---

[5]  Plaintiff further asserts that he "exhausted [his] administrative remedies under the PHRC, when the EEOC refused to dual file his first charge, instead transferring the charge to its Nashville, Tennessee office.  Had the PHRC accepted his filing, this suit would be timely even today, as their process is slower, and the time limits for filing suit much greater than the EEOC's."  (Am. Compl., ¶92).  The PHRA also dictates that private actions may not be instituted until such time as the private complainant has exhausted his

    *5.  State law claims for Negligence and Gross Negligence*

    In counts II and III, Plaintiff asserts claims for gross and "simple" negligence against all defendants under Pennsylvania common law.  These counts also fail to plead viable claims.

    In any case sounding in negligence under Pennsylvania law, a plaintiff must demonstrate: (1) a duty of care recognized by the law requiring the defendant to conform to a certain standard of conduct; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff.  Farbaugh v. Pennsylvania Turnpike Commission, 590 Pa. 46, 911 A.2d 1264, 1272-1273 (2006); R.W. v. Manzek, 585 Pa. 335, 346, 888 A.2d 740, 746 (2005).  Furthermore, there are no degrees of negligence in Pennsylvania; there are only differing standards of care.  Ferrick Excavating & Grading Co. v. Senger Trucking Co., 506 Pa. 181, 191, 484 A.2d 744, 749 (1984); Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d 823, 828 (E. D. Pa. 2001).

    Instantly, it appears that Mr. Parker is seeking to hold "all defendants" liable for the purported failure of USCF President Bill Hall, USCF Board Members Goichberg and Channing,

---

available administrative remedies and within two years of receipt of notice that the Commission has closed the administrative complaint/charge of discrimination.  43 P.S. §962(b),(c).  Given Plaintiff's allegation that the EEOC refused to dual file his first charge, presumably in September 2006, it appears that he never filed a charge with the PHRC and thus never exhausted his administrative remedies under the PHRA.  For this reason also, we dismiss count VI as barred.

one Mike Nolan and presumably the USCF itself to investigate the
fake Sam Sloan, which Plaintiff submits, constituted an
intentional breach of USCF's "legal duty to the public, including
Plaintiff, to prevent it from foreseeable harm attributable to
its business operations."  (Am. Compl., ¶64).   We cannot find
any legal authority that suggests that these defendants had any
legally recognized duty to investigate the veracity or origins of
postings on an internet message board or to determine the actual
or true identity of the person or persons authoring those
postings.  We also cannot find any authority which imposes a duty
to so investigate on the president, board members or paid
computer staffers of an organization like USCF, which plaintiff
alleges to be an "Illinois, nonprofit, 501(c)(4) corporation."
Accordingly, we also dismiss Plaintiff's claims for gross and
simple negligence pursuant to Fed. R. Civ. P. 12(b)(6).

> *6.   State Law Claims for Fraudulent and Negligent*
> *Misrepresentation*

Plaintiff has also included, in count IX of his amended
complaint, a claim for fraudulent misrepresentation against
defendants Channing and the USCF.  Not surprisingly, Mr. Channing
and the USCF also move to dismiss this claim pursuant to Rule
12(b)(6).

In Pennsylvania, fraud consists of anything calculated to
deceive, whether by single act or combination, or by suppression
of truth, or suggestion of what is false, whether it be by direct

falsehood or by innuendo, by speech or silence, word of mouth or look or gesture.  <u>Rohm & Haas Co. v. Continental Casualty Co.</u>, 566 Pa. 464, 477, 781 A.2d 1172, 1179 (2001).  That is, there must be a deliberate intent to deceive.  <u>Id</u>.  To establish a claim for fraudulent misrepresentation under Pennsylvania law, a plaintiff must prove: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result."  <u>Petruska v. Gannon University</u>, 462 F.3d 294, 310 (3d Cir. 2006), quoting <u>Martin v. Lancaster Battery Co.</u>, 530 Pa. 11, 19, 606 A.2d 444, 448 (1992).

Here, count IX of the plaintiff's amended complaint alleges no improprieties on the part of the USCF.  As to defendant Joel Channing, Plaintiff avers that Mr. Channing made "numerous misrepresentations to Plaintiff by feigning ignorance of the identity of Defendants Truong and Polgar as the FSS, <u>as he was directing their conduct</u>."  (Am. Compl., ¶113).  Plaintiff goes on to allege that he "reasonably relied, to his detriment, on the above misrepresentations," and that "[a]s a direct and proximate result of the misrepresentations, Plaintiff elected not to exercise his Title VII rights during his 'right to sue,' specifically because he had no reason to believe that the FSS was

on the USCF Board." (Am. Compl., ¶s 114, 115). In so doing, Mr. Parker does not reveal what the alleged misrepresentations were or how they were fraudulent. Fed. R. Civ. P. 9(b) dictates that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Inasmuch as count IX fails to satisfy this standard, we likewise conclude that it too fails to state a viable claim under Rule 12(b)(6) and is therefore appropriately dismissed.

  *7. State Law Claim for Libel*

  In his first count, the plaintiff seeks to recover compensatory and punitive damages from all defendants for libel under Pennsylvania state law.

  Slander and libel are both forms of defamation; slander is defamation by words spoken and libel is defamation by written or printed material. 12th Street Gym, Inc. v. General Star Indemnity Co., 93 F.3d 1158, 1163 (3d Cir. 1996), citing, *inter alia*, Sobel v. Wingard, 366 Pa. Super. 482, 531 A.2d 520 (1987). Libel has also been described as "the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt or ridicule." Tucker v. Philadelphia Daily News, 577 Pa. 598, 848 A.2d 113, 124 (2004). To make out a cause of action for defamation under Pennsylvania state law, a plaintiff bears the burden of pleading and proving: (1) the defamatory character of

the communication, (2) its publication by the defendant, (3) its
application to the plaintiff, (4) the understanding by the
recipient of its defamatory meaning, and (5) the understanding by
the recipient of it as intended to be applied to the plaintiff.
Tucker v. Fischbein, 237 F.3d 275, 281 (3d Cir. 2001); 42 Pa.
C.S. §8343(a).  Under Pennsylvania law, the court must decide at
the outset whether a statement is capable of defamatory meaning.
Id.  A communication is slanderous if it is intended to lower the
view of the target of the communication in the community or if it
is intended to deter third persons from associating with the
target.  Reardon v. Allegheny College, 926 A.2d 477, 484 (Pa.
Super. 2007).  In determining whether a communication is
slanderous, the Court must determine the effect of the
communication in the minds of average people amongst whom the
communication is intended to circulate.  A statement of opinion,
however, cannot constitute slander.  Id., citing Walker v. Grand
Central Sanitation, 430 Pa. Super. 236, 634 A.2d 237, 240 (1993).

Applying these criteria to the amended complaint at issue,
we note that while Plaintiff has detailed more than fifty
postings on the USENET message board, we can find no more than 3
of these which arguably might be understood to refer to him.  In
paragraph 44, Mr. Parker outlines these as follows:

"a) That Plaintiff's mother had evicted him, and that he had
'no job and no money' (paragraph 21(f)).

b) That Plaintiff lived with his mother, who, at the time of

25

publication, had died weeks earlier, which was known to this court and the public record the next day. (Paragraph 25(g)).

c) That Plaintiff 'wishes he had thought of' soliciting eight year-old girls. (Paragraph 25(h))."

We first note that we find nothing slanderous or defamatory in mentioning that someone lives with his mother and thus to the extent that Mr. Parker is endeavoring to base his libel claim upon this remark, those claims are dismissed with prejudice.  We further note that, as there is nothing in the plaintiff's pleading which can be read to suggest that any of the named defendants with the exception of Mr. Truong and Ms. Polgar, (who are alleged to have been operating as the imposter) authored any of the potentially libelous postings, count I of the amended complaint is dismissed with prejudice as to Defendants Channing, Goichberg and the USCF.  As to the remaining two remarks, while a close call, we do find that the plaintiff has averred sufficient facts to arguably state a potentially viable cause of action for libel against Defendants Polgar and Truong. Accordingly, as to those two defendants only, this count shall stand.

8.  *State Law Claim for Civil Conspiracy*

Count VII of the amended complaint purports to state a claim under Pennsylvania state law for civil conspiracy.  Civil conspiracy requires proof that two or more persons combined to do an unlawful act or to do an otherwise lawful act by unlawful

means.  Petruska, 462 F.3d at 309, n.13, citing Thomson Coal Co. v. Pike Coal, 488 Pa. 198, 211, 412 A.2d 466 (1979).  A civil conspiracy claim also requires an underlying tort cause of action and in the absence of such an underlying action, dismissal of a claim for civil conspiracy is proper.  See, Allegheny General Hospital v. Philip Morris, Inc., 228 F.3d 429, 436 (3d Cir. 2000); Nix v. Temple University, 408 Pa. Super. 369, 380, 596 A.2d 1132, 1137 (1991).  To adequately plead a civil conspiracy claim, a plaintiff must allege particularized facts, "such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose."  Bair v. Purcell, 500 F. Supp. 2d 468, 500 (M.D. Pa. 2007).

Again, given our finding that with the exception of Defendants Polgar and Truong, the plaintiff's amended complaint fails to state an underlying tort claim, we conclude that it likewise fails to state a claim upon which relief may be granted for civil conspiracy against Defendants USCF, Goichberg and Channing and count VII is therefore dismissed with prejudice against those defendants.  While it is far from a model pleading with regard to Truong and Polgar, we find that it sufficiently alleges the elements of conspiracy against them and is therefore adequate to withstand their 12(b)(6) motion.

B.   <u>Propriety of Service of Process</u>

Defendants next allege that because the plaintiff failed to properly serve the complaint and/or the amended complaint upon them, the Court cannot exercise jurisdiction in this matter. Insofar as we find that the amended complaint has failed to state viable claims against Defendants Goichberg, Channing and the USCF and is dismissed as against those moving defendants, we do not consider their arguments with regard to service of process, turning instead only to the arguments raised on this issue by the two remaining defendants, Polgar and Truong.

Specifically, Mr. Truong and Ms. Polgar assert, and the plaintiff does not dispute, that "service" of original process was effectuated upon them in this matter by express mailing the complaint to the Susan Polgar Institute for Chess Excellence at Texas Tech University in Lubbock, Texas.  (See Return of Service dated 5/31/08, filed by Plaintiff on June 5, 2008, Docket No. 2). Moving Defendants further allege, and Plaintiff likewise does not question, that the express mailing was accepted for delivery and signed by one "H. Santos," and hence neither of these named defendants themselves accepted the express mail package containing the original complaint.

Fed. R. Civ. P. 4(c) sets forth the general rules governing service of summons and complaint in district court actions:

**(c) Service.**

28

**(1) In General.**  A summons must be served with a copy of the complaint.  The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

**(2) By Whom.**  Any person who is at least 18 years old and not a party may serve a summons and complaint.

**(3) By a Marshal or Someone Specially Appointed.**  At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court.  The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915 or as a seaman under 28 U.S.C. §1916.

It appears that the plaintiff elected to proceed to make service in this matter pursuant to Rule 4(e), which governs "Serving an Individual Within a Judicial District of the United States," and which provides:

Unless federal law provides otherwise, an individual - other than a minor, an incompetent person, or a person whose waiver has been filed - may be served in a judicial district of the United States by:

**(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

**(2)** doing any of the following:

**(A)** delivering a copy of the summons and of the complaint to the individual personally;

**(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

**(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

29

Pa.R.C.P. 404 governs "Service Outside the Commonwealth" and provides in relevant part:

Original process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof:

(1) by a competent adult in the manner provided by Rule 402(a);

(2) by mail in the manner provided by Rule 403;

(3) in the manner provided by the law of the jurisdiction in which the service is made for service in an action in any of its courts of general jurisdiction;   ...

Under Pa.R.C.P. 403,

If a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent.  Service is complete upon delivery of the mail. ...

The Texas Rules of Court are somewhat similar.  Tex. R. Civ. P. 106(a) states: "Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by

(1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or

(2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

Tex. R. Civ. P. 103, in turn, discusses who may serve process:

Process -- including citation and other notices, writs, orders, and other papers issued by the court -- may be

served anywhere by (1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not less than eighteen years of age, or (3) any person certified under order of the Supreme Court. Service by registered or certified mail and citation by publication must, if requested, be made by the clerk of the court in which the case is pending. But no person who is a party to or interested in the outcome of a suit may serve any process in that suit, and, unless otherwise authorized by a written court order, only a sheriff or constable may serve a citation in an action of forcible entry and detainer, a writ that requires the actual taking of possession of a person, property or thing, or process requiring that an enforcement action be physically enforced by the person delivering the process. The order authorizing a person to serve process may be made without written motion and no fee may be imposed for issuance of such order.

Here, assuming that Plaintiff was trying to serve Mr. Truong and Ms. Polgar under either Pennsylvania or Texas law, it is clear that his efforts were unsuccessful.  For one, it appears that Mr. Parker himself mailed the summons and complaint.  This is prohibited by the Texas rule requiring that service by return receipt mail be accomplished only by the Clerk of Court and not by a person who is a party or interested in the outcome of the suit.  And, while Pennsylvania law permits service of process to be accomplished on an out-of-state defendant via mail, it must be the type of mailing which requires a receipt signed by the defendant or his authorized agent.  Notwithstanding that express mail does not appear to require a signed receipt to be delivered, the defendants assert and there is nothing to refute that they did not authorize the person who accepted delivery of the plaintiff's express mail package to do so on their behalf.   We

31

therefore are constrained to agree that service in this matter on Mr. Truong and Ms. Polgar was defective.

However, as we previously discussed, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process upon learning that service is improper. <u>See</u>: <u>Umbenhauer</u>, 969 F.2d at 30.  Dismissal is deemed to be inappropriate when there exists a reasonable prospect that service may yet be obtained.  <u>Id</u>. Accordingly, we shall quash the service previously made upon these remaining defendants with leave to the plaintiff to effect proper service within the next 30 days.[6]

    C.   <u>Personal Jurisdiction Over Defendants Polgar and Truong</u>

Finally, Defendants Polgar and Truong move, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss the plaintiff's complaint against them for insufficient personal jurisdiction.  Mr. Parker has filed a counter-motion to conduct jurisdictional discovery with respect to these defendants.[7]

If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists.  <u>General Electric Co.</u>

---

[6]   In this respect, we effectively grant the plaintiff's second motion for extension of time to serve complaint (Docket No. 32).

[7]   Mr. Parker's motion to conduct jurisdictional discovery is also directed to defendant Joel Channing.  Because we have found that the amended complaint fails to otherwise plead viable causes of action against Mr. Channing, the motion to take discovery into Mr. Channing's contacts with this forum would be fruitless and is denied.

v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  Pursuant to Rule
4(k) of the Federal Rules of Civil Procedure, "a federal district
court may assert personal jurisdiction over a nonresident of the
state in which the court sits to the extent authorized by the law
of that state."  Marten v. Godwin, 499 F.3d 290, 296 (3d Cir.
2007).  In Pennsylvania, state law provides for jurisdiction "to
the fullest extent allowed under the Constitution of the United
States" and "based on the most minimum contact allowed under the
Constitution of the United States."  Id.; 42 Pa. C.S. §5322(b).
The Due Process Clause of the Fourteenth Amendment requires that
nonresident defendants have "certain minimum contacts with the
forum state such that the maintenance of the suit does not offend
traditional notions of fair play and substantial justice."  Kehm
Oil Co. v. Texaco, Inc., 537 F.3d 290, 299-300 (3d Cir. 2008),
quoting International Shoe Co. v. Washington, 326 U.S. 310, 316,
66 S. Ct. 154, 90 L. Ed. 95 (1945).  Having minimum contacts with
another state provides "fair warning" to a defendant that he or
she may be subject to suit in that state.  Id., citing Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.
Ed. 2d 528 (1985).  See Also, Shaffer v. Heitner, 433 U.S. 186,
218, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

    These basic due process principles are reflected in the two
recognized types of personal jurisdiction - general and specific.
Kehm Oil, 537 F.3d at 300.  General jurisdiction exists when a

defendant has maintained systematic and continuous contacts with the forum state.  Marten, supra., citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-415 & n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).  Specific jurisdiction arises when the plaintiff's claim "is related to or arises out of the defendant's contacts with the forum," and the court may go forward if it is satisfied that the relationship among the defendant, the cause of action, and the forum falls within the "minimum contacts" framework first announced in International Shoe, supra.  Mellon Bank (East) PSFS, National Association v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992), quoting, inter alia, Dollar Savings Bank v. First Sec. Bank, 746 F.2d 208, 211 (3d Cir.1984).  The inquiry as to whether specific jurisdiction exists has three parts.  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007).  First, the defendant must have "purposefully directed its activities at the forum." Second, the litigation must "arise out of or relate to" at least one of those activities.  And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with fair play and substantial justice."  Id, (citations omitted).

Instantly, the plaintiff avers in his amended complaint that "Defendants Paul Truong and Susan Polgar are married, and now domiciled and reside in Texas and are employed by Texas Tech

University at the address listed for them in the caption...Both
defendants are members of the Executive Board of Directors
("Board") of Defendant USCF."  (Am. Cmpl., ¶3).  At paragraph 7,
Plaintiff further alleges that this Court has jurisdiction over
the defendants by virtue of ... "Defendant USCF's (and, by
extension, its Board's) minimum contacts with and business
conducted in the Commonwealth, and Pennsylvania's long-arm
statute."   Defendants note that the sole apparent factual basis
for the plaintiff's numerous legal claims is his belief that
these moving defendants posted statements on a website in his
name which placed him in a false light.  While we are inclined to
agree with the defendants that such claims are not sufficient to
demonstrate the "purposeful direction of activities at the
forum," we shall nevertheless afford the plaintiff an opportunity
to conduct some limited discovery into the defendants' activities
in Pennsylvania.  For this reason, we shall grant Mr. Parker's
motion to conduct jurisdictional discovery and shall for the
moment continue that portion of the defendants' motion to dismiss
pursuant to Fed. R. Civ. P. 12(b)(2) for a period of forty-five
days to permit the parties to develop a record with respect to
this issue.[8]

---

   [8]   Given that it was Defendants Channing, Goichberg and the USCF who
filed the motion to strike the complaint for failure to conform to Rule 8 and
because it contains scandalous and impertinent matter and our dismissal with
prejudice of Plaintiff's claims against those defendants, we see no need to
address those arguments at this time.  Defendants Truong and Polgar did not
raise these arguments.

In view of all of the foregoing, we now grant in part and deny in part the various motions of the parties in accordance with the attached order.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
GORDON ROY PARKER, a/k/a        : CIVIL ACTION
"Ray Gordon, Creator of the     :
Pivot," d/b/a Snodgrass         :
Publishing Group                : NO. 08-CV-829
                                :
          vs.                   :
                                :
WILLIAM GOICHBERG, PAUL TRUONG  :
SUSAN POLGAR, UNITED STATES     :
CHESS FEDERATION and            :
JOEL CHANNING                   :
```

**ORDER**

      AND NOW, this   29TH      day of December, 2008, upon

consideration of the Motions to Dismiss the Plaintiff's Amended

Complaint under Fed. R. Civ. P. 12(b)(2), (5) and (6) and 12(f)

of Defendants Paul Truong and Susan Polgar (Docket No. 27), of

Defendants United States Chess Federation and William Goichberg

(Docket No. 28) and of Defendant Joel Channing (Docket No. 29),

the Plaintiff's Second Motion to Conduct Jurisdictional Discovery

against defendants Truong, Polgar and Channing (Docket No. 31),

and (3) Plaintiff's Second Motion for Extension of Time to Serve

Complaint, or for Alternative Service by Mail (Docket No. 32), it

is hereby ORDERED that the Motions to Dismiss of Defendants

Goichberg, United States Chess Federation and Channing are

GRANTED and Plaintiff's Amended Complaint is DISMISSED in its

entirety with prejudice as against those defendants.

      IT IS FURTHER ORDERED that the Motion of Defendants Polgar

and Truong to Dismiss is GRANTED IN PART AND DENIED IN PART and Counts II, III, IV, V, VI, and VIII of the Plaintiff's Amended Complaint are DISMISSED with prejudice as against those moving defendants.

IT IS STILL FURTHER ORDERED that Plaintiff's Motions to Conduct Jurisdictional Discovery and to Extend Time to Serve Amended Complaint are GRANTED IN PART, Plaintiff is given thirty (30) days from the entry date of this Order to effectuate proper service upon Paul Truong and Susan Polgar and forty-five (45) days from the entry date of this Order to conduct jurisdictional discovery with respect to those same defendants.  At the expiration of that time or within sixty (60) days of the entry date of this Order, the parties are DIRECTED to file supplemental briefs limited to the issue of whether or not this Court has personal jurisdiction over Defendants Polgar and Truong along with appropriate record support for their respective positions.

BY THE COURT:

S/J. CURTIS JOYNER
J. CURTIS JOYNER,          J.